176 N.J. Super. 121 (1980)
422 A.2d 443
ANTHONY DOMENICK, PETITIONER-APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1980.
Decided October 22, 1980.
*124 Before Judges MICHELS, ARD and FURMAN.
Martin F. Kronberg argued the cause for appellant.
Peter D. Pizzuto, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Petitioner Anthony Domenick (Domenick) appeals from a final decision of the Division of Tax Appeals (Division), sustaining the denial by respondent Director of the Division (Director) of a claim for partial refund of a tax paid under the New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., L. 1976, c. 47, § 54A:1-1 et seq., for the year 1976. Domenick sought to exclude from gross income taxes, under N.J.S.A. 54A:5-1(a), a portion of the commissions he received from employment as an outside wine and liquor salesman. The portion he sought to exclude represented the amount of expenses he incurred in his sales activities which were not reimbursed by his employer. He claimed that because self-employed wine and liquor salesmen can exclude all selling expenses in the computation of their "net *125 profits from business" taxable under N.J.S.A. 54A:5-1(b), he should also be allowed a like exclusion under N.J.S.A. 54A:5-1(a) to avoid what he asserted to be dissimilar taxation of similarly situated persons, forbidden by equal protection guarantees. Thus, at issue is whether the New Jersey Gross Income Tax Act as applied to Domenick is violative of his constitutional guarantee to equal protection under the law.
The parties have stipulated the facts. Domenick is a wine and liquor salesman employed by a liquor wholesaler in the State of New Jersey. He, as well as other wine and liquor salesmen employed by various liquor wholesalers in the State, are members of Local 19, Distillery, Rectifying, Wine and Allied International Union of America, A.F.L.-C.I.O. (Local 19), and are covered by a collective bargaining agreement (agreement) between Local 19 and the New Jersey Wine and Spirit Wholesalers Association. Domenick is employed as an outside salesman, soliciting sales on a full-time basis for his employer, away from his employer's place of business. He makes his own schedule, but usually calls upon all accounts weekly. He determines his own hours of work. He does not have offices at his employer's premises, although he does attend sales meetings there every two weeks. Domenick does not make sales reports, but merely submits orders. His employer furnishes him with price lists and order pads. He uses his own car for soliciting and occasionally for delivering wines and liquors. Domenick chooses his own territory in which to operate, except that under the terms of the agreement he may not call upon an account which is currently served by another salesman employed by his employer. The agreement specifically provides for the rate of commissions and expenses which are to be paid all employed salesmen. With the exception of the partial reimbursement for expenses provided for in the agreement, Domenick is paid strictly on a commission basis and he must pay for all his business costs and expenses, such as gas, entertainment, promotional expenses and permit fees required by the State Division of Alcoholic Beverage Control. The agreement also provides that Domenick, as well as all *126 employed salesmen, are entitled to receive a draw against commissions and are under no liability "for any deficiencies in their guaranteed minimum drawing" upon separation from employment. Insofar as reimbursement of expenses is concerned, the agreement provides:
6:02. The Employer shall pay to all covered salesmen who have been assigned to a territory partial reimbursement for expenses in the amount of One Hundred, Fifty ($150.00) Dollars per month. Effective October 1, 1976, the said amount shall be increased to Two Hundred ($200.00) Dollars per month. There shall be no reduction in this amount during the regular vacation shutdown as is provided for under ARTICLE XV, section 15:01 and during the third week of vacation referred to in sections 15:04 and 15:05 of this Agreement. Said expenses shall not be paid, however, to any salesmen while they are on personal leave or layoff. Salesmen who are out on approved sick leave will be paid said expenses for the first thirty (30) days of such approved sick leave.
6:03. Any salesman now receiving more expense monies or a higher rate of commission or other benefits not herein provided for, shall continue to receive the same without diminution or reduction.
The agreement does not require that Domenick, or any other salesman, submit proof of expenses in any amount as a precondition to receiving "partial reimbursement for expenses."
In addition to the payment of commissions and partial reimbursement of expenses provided by the agreement, Domenick's employer pays for his benefit and protection, Social Security and withholding taxes and workers' compensation and unemployment compensation insurance premiums. His employer also makes contributions to the Wine and Liquor Salesmen of New Jersey Retirement Fund to provide him pension benefits, and to the Wine and Liquor Salesmen of New Jersey Welfare Fund to provide him and his family life insurance, Blue Cross, Blue Shield and major medical insurance.
Domenick filed with the Director a claim for a refund of $38 of gross income tax paid for the taxable period July 1, 1976 to December 31, 1976. He sought to exclude $1,900 in selling expenses from the commissions he received during that period. The Director denied his claim, holding that N.J.S.A. 54A:5-1(a) subjects to taxation the full amount of commissions received by persons employed as salesmen. Domenick appealed that ruling to the Division. Judge Doherty in the Division upheld the *127 Director's construction of N.J.S.A. 54A:5-1(a), as subjecting the entire amount of commissions received by Domenick and other employed salesmen as taxable, and dismissed the appeal. The Division judge did not reach the constitutional issue raised by Domenick since he viewed the issue to be beyond the Division's jurisdiction. This appeal followed.
The New Jersey Gross Income Tax Act, N.J.S.A. 54A:1-1 et seq., imposes a tax upon the taxpayer's "gross income" at the rate of 2% of the first $20,000 of such income and 2.5% of the amount of such income in excess of $20,000. N.J.S.A. 54A:2-1. A taxpayer is allowed personal exemptions as deductions from gross income in the amount of $1,000 for himself, his spouse and each dependent, and additional exemptions in the case of his own or his spouse's blindness, disability or having attained the age of 65. N.J.S.A. 54A:3-1. The act also allows certain credits against the tax liability it imposes, principally for income tax paid by New Jersey residents to other states and a $65 credit allowable to residents of rented housing. N.J.S.A. 54A:4-1, 4-3.
Apart from these credits and exemptions, the act allows a deduction from gross income in only two instances. N.J.S.A. 54A:3-2 provides for a deduction for alimony and separate maintenance payments from the gross income of the spouse making such payments to the extent that they are includible in the gross income of the spouse receiving them. N.J.S.A. 54A:3-3 allows, subject to specified conditions, a deduction for medical expenses incurred for the taxpayer, his spouse and dependents in excess of 2% of the taxpayer's gross income.
The act defines "gross income" to consist of 14 enumerated categories of income, all equally taxable. N.J.S.A. 54A:5-1, in pertinent part, provides:
New Jersey gross income shall consist of the following categories of income:
(a) Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property;
(b) Net profits from business. The net income from the operation of a business, profession, or other activity, after provisions for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for Federal income tax purposes but without deduction of taxes based on income.
*128 Under the clear and explicit provisions of subsection (a), any employed taxpayer is taxable on the full amount of the compensation received from his employment, whether it is in the form of a salary or commissions or otherwise. However, under subsection (b), a self-employed taxpayer is taxed only upon the net profits he derives from the business in which he is engaged. In computing net profits, under subsection (b), the self-employed taxpayer may reduce his gross receipts by the amount of his business expenses. No similar exclusion for business expenses is allowed in the case of income derived from employment, such as in Domenick's case, except that the Director has construed subsection (a) as not to require an employee to include in gross income amounts received from his employer in reimbursement of expenses incurred on the employer's behalf, provided such employee incurred actual expenses in that amount. Thus, Domenick is not required to include in gross income the $200 monthly partial reimbursement for expenses paid by his employer under the agreement, provided, of course, that he incurred actual expenses in that amount.
Domenick contends that N.J.S.A. 54A:5-1(a), in providing for taxation of the full amount of commission he receives from his employer without an exclusion for expenses not specifically reimbursed by his employer, deprives him of equal protection of the law, and therefore, the New Jersey Gross Income Tax Act, as applied to him, is unconstitutional. We disagree.
The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed. [Levine v. Institutions & Agencies Dep't, 84 N.J. 234, 256 (1980), quoting from Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 553 (1949)]
Stated differently, constitutional principles of equal protection do not require that all persons be treated identically. They require only that any differences in treatment be justified by an appropriate state interest. The State need only show a rationale basis for its classification where, as here, the classification is not suspect. As the United States Supreme Court stated in *129 Parham v. Hughes, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979):
State laws are generally entitled to a presumption of validity against attack under the Equal Protection Clause. Lockport v. Citizens for Community Action, 430 U.S. 259, 272, 97 S.Ct. 1047, 1055, 51 L.Ed.2d 313. Legislatures have wide discretion in passing laws that have the inevitable effect of treating some people differently from others, and legislative classifications are valid unless they bear no rational relationship to a permissible state objective. New York City Transit Authority v. Beazer, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587; Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171; Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520; Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491.
Not all legislation, however, is entitled to the same presumption of validity. The presumption is not present when a State has enacted legislation whose purpose or effect is to create classes based upon racial criteria, since racial classifications, in a constitutional sense, are inherently "suspect." McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222; Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, 53 Ohio Ops. 326, 38 A.L.R.2d 1180. And the presumption of statutory validity may also be undermined when a State has enacted legislation creating classes based upon certain other immutable human attributes. See, e.g., Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (national origin); Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (alienage); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (illegitimacy); Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (gender).
In the absence of invidious discrimination, however, a court is not free under the aegis of the Equal Protection Clause to substitute its judgment for the will of the people of a State as expressed in the laws passed by their popularly elected legislatures. "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." Vance v. Bradley, 440 U.S., at 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171.
[441 U.S. at 351, 99 S.Ct. 1745-1746, 60 L.Ed.2d 274-275; footnotes omitted]
See, also, San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16, 33 (1973), reh. den. 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); State v. Fearick, 69 N.J. 32, 40 (1976); Trantino v. Corrections Dep't, 168 N.J. Super. 220, 227-228 (App.Div. 1979).
Moreover, we point out that "where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351, *130 354-355, reh. den. 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 200 (1973); see, also, Allied Stores of Ohio v. Bowers, 358 U.S. 522, 526-527, 79 S.Ct. 437, 440-441, 3 L.Ed.2d 480, 484-485 (1959); Wilson v. Long Branch, 27 N.J. 360, 377 (1958) cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). Thus, recognizing this principle, our Supreme Court in Salorio v. Glaser, 82 N.J. 482, 515, aff'd ___ U.S. ___, 101 S.Ct. 49, 66 L.Ed.2d 7 (1980), stated:
In determining whether the classification employed by the State bears a rational relation to a legitimate governmental purpose, it is important to remember that states have been accorded great latitude in the field of taxation:
Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. [Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593 (1940) (footnotes omitted)].
There is no question as to the power of the State to tax gross income, and there is equally no question as to the right of the State to limit deductions to facilitate the administration of the tax and to promote tax equity through the imposition of the tax at like rates upon all income. These are legitimate state purposes. Viewed in this light, we are satisfied that a rational basis exists for differentiating between employed salesmen, such as Domenick, and self-employed salesmen with respect to the allowance of deductions against gross income in arriving at taxable income under the act. The uncontroverted proofs and, in particular, the agreement between Local 19 and the New Jersey Wine and Spirit Wholesalers' Association covering Domenick and other employed salesmen, lends strong support to the legislative determination to accord these two classifications of salesmen different treatment under the New Jersey Gross Income Tax Act. For example, Domenick and other employed salesmen covered by the agreement are required to work full-time for their respective employers and attend biweekly sales *131 meetings. Additionally, while such employed salesmen are restricted at to the customers they may call upon, they in turn are protected from competition by their coemployees. They are subject also to discharge when their sales fall below a specified minimum. More importantly, Domenick is entitled under the agreement to a $200 a month expense allowance. And finally, Domenick and other similarly situated employed salesmen have the benefit and protection for themselves and their families of life and health insurance and a pension program, as well as workers' compensation insurance and unemployment compensation benefits. This stands in stark contrast to the self-employed salesman or entrepreneur who does not enjoy many of these important benefits. The self-employed salesman is generally free to conduct his business as he sees fit without the restrictions and limitations that are imposed upon the employed salesman by his employer. However, unlike the employed salesman, the self-employed salesman is not protected to any degree from competition from other salesmen. Additionally, the self-employed salesman must pay his own business expenses and provide for his own vacation, life and health insurance and retirement benefits from his gross income. Thus, the differences between the employed salesmen and the self-employed salesmen are real and substantial, and establish a completely rational basis for taxation of employed salesmen, such as Domenick, on gross rather than net income, without an allowance for business expenses.
Consequently, we have no hesitancy in concluding that Domenick has failed to meet his burden of demonstrating that the classification lacks any rational basis to the legitimate State purpose. See Levine v. Institutions & Agencies Dep't, supra, 84 N.J. at 257; Salorio v. Glaser, supra, 82 N.J. at 515; Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp., 80 N.J., 6, 40 (1976), app. dism. and cert. den. 430 U.S. 977, 97 S.Ct. 1672, 52 L.Ed.2d 373 (1977). As a matter of fact, there was a total absence of proof before the Division as to how the taxes paid by Domenick and other employed salesmen compare with the taxes paid by *132 self-employed salesmen, and the effect, if any, upon each's net income.
Finally, Commonwealth v. Staley, 476 Pa. 171, 381 A.2d 1280 (Sup.Ct. 1978), relied upon by Domenick, does not persuade us to reach a contrary conclusion. The Staley case is grounded on the authority of the tax uniformity clause of the Pennsylvania Constitution which is so rigid as to preclude even graduation of tax rates and exemption of interest on state obligations. It was only because of this restrictive uniformity provision that the Pennsylvania Supreme Court found it necessary to imply an exclusion for employee expenses in the Pennsylvania income tax statute's definition of "compensation" as "remuneration received for services rendered." Our State Constitution does not contain such a restrictive tax clause.
Accordingly, we hold that the provisions of N.J.S.A. 54A:5-1(a) and N.J.S.A. 54A:5-1(b) of the New Jersey Gross Income Tax Act, as applied to Domenick, are not unconstitutionally discriminatory and therefore the Director properly sustained the denial of Domenick's claim for a partial refund of a tax paid based on the exclusion from income of expenses incurred in his sales activities.
Affirmed.