CRABTREE, J. T. C.
This is a gross income tax case wherein plaintiff seeks review of deficiency determinations made by defendant for the years 1977, 1978 and 1979. Those deficiencies arise from defendant’s disallowance of business-related expenses for 1977 and 1979 and, for all years, defendant’s adjustment in the calculation of the credit for taxes paid to other jurisdictions. Plaintiff abandoned the. latter issue at the trial. Similarly, defendant conceded the actual expenditure of the amounts claimed by plaintiff in 1977 and 1979.
Thus, the narrow issue before this court is the deductibility of expenses claimed by plaintiff for New Jersey gross income tax purposes. Plaintiff contends that he is engaged in the operation of a business with respect to which he is required to include in-gross income only the net profits therefrom, after provision for all costs and expenses incurred in the conduct thereof, as provided in N.J.S.A. 54A:5-l(b). Defendant avers, on the other hand, that plaintiff is an employee and, in accordance with N.J.S.A. 54A:5-l(a), he must include in gross income the full amount of all remuneration received in connection with such employment, undiminished by expenses incurred in connection therewith.
It is not disputed that the New Jersey Gross Income Tax Act does not permit the deduction of expenses incurred in connection with a taxpayer’s employment. Domenick v. Taxation Div. Director, 176 N.J.Super. 121, 422 A.2d 443 (App.Div. 1980).
Simply put, the court must determine whether plaintiff was an independent contractor or a common law employee, and that determination is essentially a factual one, to be reached only after an examination of all the facts and circumstances pertaining to plaintiff’s activities and his relationship with the other parties involved in those activities. Air Terminal Cab, Inc. v. United States, 478 F.2d 575 (8 Cir. 1973), cert. den. 414 U.S. 909, 94 S.Ct. 228, 38 L.Ed.2d 146 (1973).
During the years under review approximately 95% of plaintiff’s personal service income was derived from the pursuit of *271 his occupation as an announcer of commercial messages (“commercials”) on radio and television. In the latter medium he is the “voice-over”, f.e., the unseen announcer for the filmed or video-taped commercial. The balance of his personal service income was derived from infrequent “on-camera” appearances on television daytime dramas (sometimes called the “soaps”) and commercials and occasional voice-over narration of training films made for private industry.
Plaintiff is a member of three unions, the American Federation of Television and Radio Artists (AFTRA), Screen Actors’ Guild (SAG) and Actors’ Equity Association (Equity). AFTRA’s jurisdiction covers radio and video-taped commercials, SAG’s jurisdiction embraces filmed television commercials (even though plaintiff’s participation is a taped “voice-over” message), and Equity is involved with theatrical stage performances. Some years ago these unions negotiated collective bargaining agreements with television, stage and cinema producers calling for the withholding of state and federal income taxes and FICA tax from compensation paid to union members. In view of the withheld taxes, compensation paid to union members was shown on IRS Form W-2 issued by the producers or their paying agents. The withholding of FICA was viewed as a significant victory by the unions and its members, as it helped ameliorate the financial peaks and valleys to which actors and other performing artists were notoriously subject. It is also worthy of note that the FICA tax withheld from the union members’ compensation was less than the Social Security tax imposed upon the self-employed. Further, the producers were required to pay the employers’ share of FICA tax, the amount of which equaled the FICA tax withheld from the union members. No payment of Social Security taxes would have been required from the producers had the union members been treated as independent contractors subject to the Social Security tax on self-employment income. 26 U.S.C. §§ 1401, 1402.
Compensation paid to plaintiff for services rendered as a radio and television announcer to signatories of the aforementioned collective bargaining agreements was reflected on IRS Form *272 W-2 and FICA, and income taxes were withheld. Compensation paid to plaintiff for services rendered as an announcer or film narrator to parties who were not signatories to the collective bargaining agreements was shown on IRS Form 1099, and no taxes were withheld.
Plaintiff’s services as an announcer of commercials were arranged through an agent, Lester Lewis Associates (Lewis), who received 10% of gross compensation paid to plaintiff for each job plaintiff performed. The job-finding process was initiated when the producer of an advertising agency or an independent casting director called several agents, such as Lewis, to summon the agents’ clients to an audition, which plaintiff attended at his own expense; he was not paid for attending auditions. The purpose of the audition was to select one announcer for a particular commercial. If plaintiff were the winning candidate, his agent called and advised him when and where to appear to make the commercial. The agent had theretofore negotiated the price to be paid plaintiff and the terms of residual or other guaranteed payments (residual payments are those which continue so long as the commercial is aired). During the years in issue plaintiff attended 11 auditions for every job he obtained. The competition in plaintiff’s field of activity was intense.
Commercials were made at recording studios in New York city. Each commercial was customarily completed in the space of one hour or, at most, an hour and a half. Plaintiff’s services were performed for a large number of advertising agencies. Payment of plaintiff’s compensation was made within 15 days after completion of each commercial by the advertising agency engaging him or by its disbursing agent. Plaintiff could not be discharged from his engagement. If the producer or casting director — or the sponsor- — were dissatisfied with plaintiff’s performance, plaintiff was nevertheless entitled to be paid the agreed-upon compensation, even though the commercial may have never been broadcast. (Plaintiff testified, that, in his opinion, if he were to appear at the recording studio in an intoxicated condition or was otherwise incapacitated from per *273 forming the services required of him, he would have no right to demand payment.)
Plaintiff was free to exercise his own artistic discretion as to the manner of performance. The only control over that performance was exercised by the casting director, who indicated the desired mood or tone of the commercial (e.g., “hard sell,” dreamy quality”) and the time within which it was to be recorded. The recording studio, an enterprise independent of the advertising agencies, determined the total time alloted for each of such agencies according to the day’s schedule.
Upon those infrequent occasions when plaintiff would fly to California for “on-camera” commercials, the advertising agency paid his air fare and hotel accommodations directly. He was reimbursed for other out-of-pocket expenses. At no time did he receive a nonrefundable expense allowance. All radio and voice-over television commercials were made in Manhattan. Plaintiff maintained an office there at his own expense. That office contained a desk, some chairs, a telephone, a telephone-answering machine and a typewriter.
Plaintiff spent a large part of his time in self-promotion. He entertained representatives of advertising agencies at lunches and dinners and sent them cards and gifts at Christmas time. He also disseminated demonstration tapes incorporating “cuts” of 11 different radio or television voice-over commercials made by him. These tapes, one of which was played in open court, were designed to demonstrate the quality and versatility of plaintiff’s talent.
Just as plaintiff was not protected from competition for commercial announcing assignments, so was he under virtually no competitive restraints in selecting the advertising agencies or product manufacturers for whom he performed his services. The only restraint in this regard was that he could not make commercials for competing products which were likely to be aired at the same time. In the past, however, he has made Volkswagen and Chevrolet commercials but they were not broadcast within concurrent time spans.
*274 Although the issue of whether an employer-employee relationship exists is essentially factual, Air Terminal Cab, Inc. v. United States, supra, the courts have applied numerous factors in distinguishing between status as an independent contractor and status as a common law employee. No single factor is conclusive; rather the relationship or status is to be ascertained by an overall view of the entire situation and an evaluation of the special facts of each particular case. Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). McCormick v. United States, 531 F.2d 554 (Ct.Cl.1976); Cape Shore Fish Co. v. United States, 330 F.2d 961 (Ct.Cl.1964).
The factors considered by the courts, to the extent here pertinent, are: (1) the relationship which the parties believe they have created, Illinois Tri-Seal Products v. United States, 353 F.2d 216 (Ct.Cl.1965); (2) the extent of control exercisable (regardless of actual exercise) by the person receiving the benefit of the services over the manner and method of performance, United States v. Webb, 397 U.S. 179, 190, 90 S.Ct. 850, 855, 25 L.Ed.2d 207 (1970); Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2d Cir. 1943); (3) whether the person rendering the service undertook substantial costs to perform the service, United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); (4) whether the service required special training or skill, McGuire v. United States, 349 F.2d 644 (9 Cir. 1965); United States v. Silk, supra; (5) the duration of the relationship between the parties, Avis Rent A Car System, Inc. v. United States, 503 F.2d 423 (2 Cir. 1974); Enochs v. Williams Packing & Nav. Co., supra; (6) whether the person rendering the service had a risk of loss, United States v. Silk, supra; (7) whether the person who received the benefit of the services could discharge without cause the person who performed the services, United States v. Silk, supra, and (8) the method of payment (by time or by job), United States v. Silk, supra.
It would appear, superficially, that the relationship which the parties intended to create is manifested by the issuance of IRS Form W-2, the form customarily used when the recipient of *275 the gross income shown thereon is a common law employee. Consistent therewith is the withholding of FICA and federal and state income taxes. I am satisfied, however, that the evidence refutes the conclusion that the issuance of Form W-2 is indicative of an employer-employee relationship. Form W-2 was the product of collective bargaining between the unions and the advertising agencies (sometimes called the producers), and the treatment of compensation paid thereunder was designed to facilitate the payment of the union members’ tax obligations and to preserve their Social Security coverage. It is also reasonable to infer that participation in the Social Security system at a lower cost to the union membership was another — albeit secondary — goal of the union negotiators. The court notes that contributions to the Social Security system by the self-employed pursuant to the terms of the self-employment tax are greater than the contributions to Social Security required of employees by way of FICA tax.
The advertising agency receiving the benefit of plaintiff’s services as a commercial announcer had only a limited right of control over the manner in which plaintiff performed those services. That control was confined to the direction of the casting director in the recording studio with respect to mood and tone. The mode and manner of execution were left entirely up to plaintiff. If an individual is subject to the control or direction of another merely as to the result to be achieved, and not as to the means of accomplishing it, the individual is an independent contractor. Jones v. Goodson, 121 F.2d 176, 179 (10 Cir. 1941). As the court observed in Radio City Music Hail Corp. v. United States, supra:
... The fact that a principal did intervene to some degree is not conclusive of the employment relationship; so does a general building contractor intervene in the work of his subcontractors. He decides how the different parts of the work must be timed, and how they shall be fitted together; if he finds it desirable to cut out this or that from the specifications, he does so. Some supervision is inherent in any joint undertaking, and does not make the contributing contractors employees. [135 F.2d at 717-718]
Plaintiff incurred substantial expenses incident to the performance of his services. He maintained an office in Manhat *276 tan; he entertained producers and disseminated demonstration tapes, made at some expense, in his efforts to obtain more assignments in his intensely competitive field of endeavor. There was no guarantee that plaintiff would ever recoup these expenditures. The only expense incurred by plaintiff that was contingent upon and measured by the production of income was the 10% fee paid to his agent. Conceivably, plaintiff’s promotional efforts would go for naught. Thus, his risk of loss was substantial.
Plaintiff’s services required special skills. I am satisfied from hearing one of plaintiff’s demonstration tapes in open court that he is a person of impressive artistic talent and versatility.
The duration of the relationship of the parties was extremely short. Plaintiff’s services were completed in one hour, or at the most, one and one-half hours. At that point he had the right to be páid in accordance with his contract and he was in fact so paid within 15 days thereafter. Plaintiff was paid by the job, not by time. During the years in issue he performed services ■ for a number of advertising agencies.
The reported cases reveal that the right to discharge the person rendering the services is indicative of an employment relationship. United States v. Silk and Cape Shore Fish Co. v. United States, both supra. Here, plaintiff could not be discharged once his services were engaged for a particular commercial. The advertising agency was obligated to pay him even if the commercial was not aired.
In view of the foregoing I conclude that plaintiff was an independent contractor, not an employee, during the years under review, and that he is thus entitled to deduct from his New Jersey gross income the costs and expenses incurred in the conduct of his business within the contemplation of N.J.S.A. 54A:5-l(b).
The recent case of Domenick v. Taxation Div. Director, supra, is distinguishable on its facts; the taxpayer was there found to be an employee.
Judgment will be entered in accordance with R. 8:9-3.