RIMM, J.T.C.
This state tax matter involves a claim by plaintiff for a refund of $782.92 assessed against him by defendant under the New Jersey Gross Income Tax Act (the act), N.J.S.A. 54A:1-1 et seq., for the year 1978. The major portion of the assessment resulted from defendant’s disallowance of deductions for business expenses claimed by plaintiff under N.J.S.A. 54A:5-1.b. In his complaint plaintiff alleges that he was a self-employed manufacturer’s representative for Everlasting Products, Inc. (Everlasting), a New Jersey corporation, with a place of business at 1355 West Front Street, Plainfield, New Jersey. Plaintiff’s services consisted primarily of selling Everlasting’s products. As stated in defendant’s brief, “[essentially, plaintiff claims he is an independent contractor, while the Director claims he is an employee.”
The act imposes a tax on New Jersey gross income. N.J.S.A. 54A:2-1. In pertinent statutory part, New Jersey gross income consists of:
*68 a. Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property;
b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provisions for all costs and expenses incurred in the. conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income .... [N.J.S.A. 54A:5-1]
If the plaintiff was an employee of Everlasting, his income would consist of “[sjalaries ... for services rendered,” and deductions for business expenses tyould not be allowed. If plaintiff was an independent contractor, he would be entitled to the claimed deductions. The words “employee” and “independent contractor” are not defined in the act. Neither is the term “business” as used in N.J.S.A. 54A:5-1.b. To this extent the question before the court is similar to the issue presented to the Supreme Court when it considered certain legislation in United States v. Silk, 331 U.S. 704, 711, 67 S.Ct. 1463, 1467, 91 L.Ed. 1757, 1766 (1947). In that case the court said, “No definition of employer or employee applicable to these cases occurs in the Act.” As a result the court said that it was “the total situation” that determined the employee or independent contractor status of the individuals involved. To the same effect is Boudrot v. Taxation Div. Director, 4 N.J.Tax 268 (Tax Ct.1982), in which Judge Crabtree held that the taxpayer was an independent contractor, and thus entitled to deduct his expenses from his gross income for New Jersey income tax purposes. In determining a taxpayer’s status, no one factor is controlling. United States v. Silk, supra, 331 U.S. at 716, 67 S.Ct. at 1469, 91 L.Ed. at 1769. As was stated in Boudrot, “No single factor is conclusive; rather the relationship or status is to be ascertained by an overall view of the entire situation and an evaluation of the special facts of each particular case.” Boudrot v. Taxation Div. Director, supra at 274.
Under Boudrot the factors to be considered are: (1) the relationship which the parties believe they have created; (2) the extent of control exercisable (regardless of actual exercise) by *69 the person receiving the benefit of the services over the manner and method of performance; (3) whether the person rendering the service undertook substantial costs to perform the service; (4) whether the service required special training or skill; (5) the duration of the relationship between the parties; (6) whether the person rendering the service had a risk of loss; (7) whether the person who received the benefit of the services could discharge without cause the person who performed the services and (8) the method of payment. Ibid.
By written agreement dated January 1, 1978 between Everlasting and plaintiff, Everlasting was to pay plaintiff $850 per week for a one year term running from January 1, 1978 to December 31, 1978. Plaintiff was prohibited from engaging in any other business during the term of the agreement. The agreement is denominated “Agreement;” it does not use the words employee, employer or independent contractor; but instead refers to the plaintiff as “Landwehr” and to Everlasting Products, Inc. as “Everlasting.” Also, the agreement acknowledges that Landwehr “has certain expertise in the business as conducted by” Everlasting, that he “will undertake to assist” Everlasting and that he “has the right ... to engage himself with ‘Everlasting’ in the conduct of business.” Plaintiff testified that he considered himself a manufacturer’s representative and argues that manufacturers’ representatives do sometimes represent only one company at a time. A person rendering services exclusively to another may nevertheless be an independent contractor. Greyvan Lines, Inc. v. Harrison, 156 F.2d 412 (7 Cir.1946), aff’d sub nom. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947); White v. J.R. Watkins Co., 1 Wash.2d 466, 96 P.2d 456 (1939); Goldberg v. Warren Bros. Roads Co., 207 F.Supp. 99 (D.Me.1962).
The agreement provided that “if desired” by plaintiff, Everlasting would deduct from its payments to him withholding taxes, social security taxes, “employment tax and such other taxes or charges as may be payable.” Everlasting did deduct certain taxes from the payments made to plaintiff, but only on his written request. The requests were made, plaintiff said, *70 because otherwise it “would have been extra work for me and I was afraid I would not do it properly.”
Plaintiff testified that, notwithstanding any written provision in the agreement, his actual understanding with Everlasting allowed the company only limited control over the manner in which he performed his services. That control was Everlasting’s right to call upon him for his assistance with its dyeing processes, based on his experience as a former manufacturer, if it had difficulty achieving desired colors for its products. On one occasion, for approximately one week, he so assisted Everlasting. In selling Everlasting’s products, however, he had no territory assigned to him, he was free to go, in his words, “clear across” the country; he was not obligated to report to Everlasting on any specified schedule and he did not attend any sales meetings. He “never had to go into the place.” He arranged his own work schedule and was not bound to work any schedule prepared by Everlasting; he even fixed his own vacation schedule. Defendant concedes that, although according to the agreement Everlasting had the power to give plaintiff instructions and directions, during the three and one half years plaintiff worked with Everlasting, including the year in question, Everlasting did not issue any directions to him “as to what to do or how to go about his job and duties.” This lends credibility to plaintiff’s testimony that his understanding with Everlasting was that it would not exercise control over him in the performance of his duties. A person is an independent contractor if he is subject to the control or direction of another only as to the result to be achieved but not as to the means to accomplish it. Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 96 A.2d 531 (1953); Falk v. Unger, 33 N.J.Super. 589, 111 A.2d 283 (App.Div.1955).
■ In the performance of his services for Everlasting, plaintiff sold only those of Everlasting’s products with which he was familiar based on his experience as a former manufacturer, namely dried flowers and foliage and silk flowers. Plaintiff had previously been in the business of manufacturing these products for approximately 28 years. He did not sell other Everlasting *71 products, such as various types of plants, even though these would have been sold to the very same customers with which he dealt. Plaintiffs sales methods included telephone solicitation and calling on customers located in eight states including Massachusetts, Rhode Island, Connecticut, Maryland and the District of Columbia. In rendering his services, plaintiff took the samples which Everlasting gave him, including samples prepared at his direction by Everlasting, to wholesale florists and display houses. He then took orders and sent the orders to Everlasting. The orders were filled and shipped directly to the customers. He also opened new accounts for Everlasting.
Plaintiff, according to the terms of the agreement, was “responsible for all of his own expenses with respect to any service which he may render,” and plaintiff did pay all of his expenses. Everlasting was not liable, and did not reimburse plaintiff, for any of his selling expenses which were, as conceded by defendant’s counsel, “fairly substantial.” They included automobile, telephone, telephone answering service, air fare, motel, hotel and car rental expenses and expenses incurred in the use of part of his residence for business purposes. He did not have an office at Everlasting’s place of business, maintaining his own office, files and a business phone and telephone answering service in his home. Plaintiff also paid for his own stationery with a letterhead which read, “Lou Landwehr Enterprises.” Employees, as opposed to independent contractors, do not normally have their own stationery or pay for their own telephone answering service in performing duties for an employer. Plaintiff also paid for his own Blue Cross and Blue Shield coverage and disability and unemployment compensation insurance.
Plaintiff’s wife kept his expense records. Her uncontradicted testimony was that plaintiff’s gross income for 1978 as a manufacturer’s representative was actually $54,888, consisting of $850 per week and a percentage of sales over a minimum since plaintiff sold approximately $650,000 of Everlasting’s products. Testimony was that this arrangement was as a result of an oral agreement between plaintiff and Everlasting which was not incorporated in the written agreement of January 1, 1978. She *72 also testified that in 1978 plaintiff spent slightly in excess of $23,000 in connection with services rendered to Everlasting, which was approximately 42% of his gross income.[1]
The agreement between Everlasting and plaintiff did provide for minimum sales production by plaintiff of $500,000 with monthly review of plaintiff’s performance. “In the event that the minimum sales required” were not met, Everlasting had “the right at its sole discretion to terminate its obligations under the terms of its agreement forthwith and without further notice.” This contract term allowing for discharge by Everlasting created a substantial risk of loss for plaintiff who might expend considerable sums for air fare, telephone answering services, car rentals and hotel and motel accommodations and still be discharged.
In Boudrot plaintiff was a member of three unions as a result of which membership state and federal income taxes and FICA tax were withheld from the compensation he received from those for whom he performed services. On those occasions when Boudrot had to fly to California in connection with his work, his air fare and hotel accommodations were paid directly, but he was not reimbursed for other out-of-pocket expenses and did not receive a nonrefundable expense allowance. Even so, the totality of the evidence disclosed an independent contractor, not an employee, status.
In Domenick v. Taxation Div. Director, 176 N.J.Super. 121, 422 A.2d 443 (App.Div.1980), the plaintiff taxpayer was an employee, not an independent contractor, and was therefore not entitled to deduct from his gross income costs and expenses incurred in the course of his employment. The taxpayer was required by agreement between the local of his union and his employer’s business association to work full time and attend biweekly sales meetings. He was restricted as to the customers he could call upon, although he was protected from competition *73 by his coemployees. He was also subject to discharge when his sales fell below a specified minimum. More importantly, he was entitled under the union agreement to a $200 a month expense allowance. Finally, he had the benefit and protection for himself and his family of life and health insurance, a pension program, workers’ compensation insurance and unemployment compensation benefits. A self-employed salesman, as the Appellate Division pointed out, does not enjoy many of these benefits and is not protected from competition from other salesmen but is generally free to conduct his business as he sees fit without the restrictions and limitations imposed on employed salesmen. The self-employed salesman also pays his own business expenses and provides for his own vacation, life and health insurance and retirement benefits.
The totality of the evidence indicates the relationship of an independent contractor exists between plaintiff and Everlasting. The assessment is set aside, and a new assessment is to be computed.[2] Agreed computations shall be submitted to the court in accordance with R. 8:9-3 for the entry of final judgment.

Plaintiff s income tax return actually reported “net profits from business” of $31,746 which, when subtracted from $54,888, indicates expenses of $23,-142, or 42.16% of gross income.

Since there was one other adjustment to plaintiffs tax return for medical expenses which resulted in the assessment and as to which there is no dispute between the parties, the assessment cannot be set aside in its entirety.