LAYTON F. AND JOAN SMITH, PLAINTIFFS-RESPONDENTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT.

ROGER AND LISA GEISSLER, PLAINTIFFS-RESPONDENTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-APPELLANT.

Argued January 6, 1987—Decided July 2, 1987.

*Mary R. Hamill,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, attorney).

*Jeffrey M. Schwartz* argued the cause for respondents (*Clapp & Eisenberg,* attorneys; *Jeffrey Schartz* and *Arnold K. Mytelka,* on the briefs).

The opinion of the Court was delivered by

GARIBALDI, J.

The issue in these cases is the proper method of taxing a partner on his or her "distributive share of partnership income" under the New Jersey Gross Income Tax Act, *N.J.S.A.* 54A:1-1 to 54A:10-12 (the "Act"). Specifically, we must determine whether all partnership income realized in the ordinary course of the business of a partnership actively engaged in the securities business is to be taxed to the partners on a net consolidated basis as a single category of income, *i.e.,* "distributive share of partnership income" under *N.J.S.A.* 54A:5-1k, or whether, pursuant to *N.J.A.C.* 18:35-1.14(c)4, the taxpayer's partnership income is to be divided into three subcategories, one of which, "distributive share of partnership income," is to be taxed on a net basis, while the other two, "dividends" and "gains," are to be taxed on a gross basis. Practically, the question posed in these cases is whether a partner in a securities firm, in determining his "distributive share of partnership income," may deduct partnership business expenses against all types of partnership income, including dividends and capital gains, realized in the ordinary course of that partnership's business.

I

These cases arise from tax deficiencies assessed against Layton and Joan Smith for 1976 and against Roger and Lisa Geissler for 1978,[1] 1979, and 1980.[2] The facts are stipulated.

At all relevant times the Smiths and Geisslers were New Jersey residents. Layton Smith was a general partner in Salomon Brothers, a New York limited partnership actively engaged in the securities business. Roger Geissler was a general partner in Easton & Co., a New York limited partner-

---

[1]The Geisslers' 1978 tax liability is no longer in dispute.

[2]Joan Smith and Lisa Geissler are parties to these actions solely by reason of filing joint returns with their respective spouses, Layton Smith and Roger Geissler (the "taxpayer" or the "taxpayers").

ship actively engaged in the securities and commodities businesses. In the ordinary course of their businesses, these partnerships generated various types of income, including commissions, investment advisory fees, underwriting and syndication fees, dealer profits, interest, dividends, and trading profits. The trading profits were capital gains realized by each partnership in the ordinary course of its business of trading securities. Likewise, in the ordinary course of their businesses, these partnerships incurred and paid business expenses, including salaries, rent, interest, and depreciation. These expenses were incurred in the production of all types of the partnerships' business income, including dividends and gains.

Each taxpayer computed his distributive share of partnership income by aggregating all the partnership's business income to which he was entitled, including dividends and gains, and deducting his share of the business expenses incurred by the partnership.[3] The taxpayers contend that business expenses in excess of partnership income other than dividends and gains may be applied against those two categories of income.

The Director agrees with the taxpayers that a "distributive share of partnership income" is a partner's share of the "[n]et income of the partnership," which is "determined and reported on the basis of accepted accounting principles ... after provision for all cost and expenses incurred in the conduct thereof." *N.J.A.C.* 18:35–1.14(c)2. The Director, however, does not agree

---

[3]The Director also assessed a deficiency against the Smiths on the ground that in computing "his distributive share of partnership income" pursuant to *N.J.S.A.* 54A:5–1k, Mr. Smith deducted business expenses incurred by the partnership that were related to the production of tax-free interest and non-taxable gains, contrary to *N.J.A.C.* 18:35–1.14(c)2, which provides: "No deduction from gross income shall be allowed for ... [e]xpenses unrelated to the production of taxable income." The Tax Court ruled that the regulation is "irreconcilable with the statute," which expresses the Legislature's intent that all business expenses be deductible. *Smith v. Director, Div. of Taxation,* 7 *N.J.Tax* 187, 202 (1984). The Appellate Division affirmed, 8 *N.J.Tax* 319 (App.Div.1986). The Director does not appeal this part of the Tax Court's holding.

that the "net income of a partnership" includes dividend and capital gains realized by a partnership in the ordinary course of its business. Instead, the Director, relying on *N.J.A.C.* 18:35–1.14(c)4, concludes that partnership income consists of three separate categories of income—"distributive share of partnership income," "dividend income," and "gain from the sale, exchange or other disposition of property." Under the Director's theory, partnership business expenses are deductible only against "distributive share of partnership income"; and business expenses exceeding that income are not deductible against income from dividends and capital gains, even where, as here, such income is realized in the ordinary course of business. The result is that not all business expenses incurred in producing partnership income in the ordinary course of business are deductible against partnership income realized in the ordinary course of business. The effects of the taxpayers' and the Director's methods of computation are illustrated in the following table, which uses figures proportionate to those involved in the *Smith* case:

Distributive share of
  partnership:

|  | Taxpayer | Director |
|---|---|---|
| Dividends | $ 8 | $ 8 |
| Capital gains | 211 | 211 |
| Interest | 161 | $161 |
| Other ordinary income | 330 | 330 |
| Expenses | (684) | (684) |
|  |  | (193)  –0– |
| Partnership income subject to tax | $ 26 | $219 |

The Tax Court concluded that "*N.J.A.C.* 18:35–1.14(c)4, as applied to a partnership in which dividend and capital-gain income are generated in the ordinary course of business, is plainly

inconsistent with the statute and must be disregarded." *Smith v. Director, Div. of Taxation, supra,* 7 *N.J.Tax* at 207; *see also Geissler v. Director, Division of Taxation,* No. GI 0633–83 (March 8, 1985) (decided on the grounds expressed in *Smith* ). The Appellate Division affirmed, substantially for the reasons set forth by the Tax Court in its *Smith* opinion. 8 *N.J. Tax* 319 (App.Div.1986). We granted certification, 104 *N.J.* 448 (1986), and now affirm.

## II

We start our analysis with a brief review of relevant statutory provisions. The Act does not tax partnerships as such. *N.J.S.A.* 54A:2–2. Instead, the Act provides that "[i]ndividuals carrying on business as partners shall be liable for the New Jersey Gross Income Tax only in their separate or individual capacities." *N.J.S.A.* 54A:2–2. Individuals are taxed on their New Jersey gross income, defined to consist of fourteen categories. *N.J.S.A.* 54A:5–1.[4] Some of these categories are taxed on

---

[4]Relevant provisions of *N.J.S.A.* 54A:5–1 are:

New Jersey gross income shall consist of the following categories of income:

a. Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered whether in cash or in property.

b. Net profits from business. The net income from the operation of a business, profession, or other activity, after provisions for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income.

c. Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes.

\* \* \* \* \* \* \* \*

d. Net gains or net income derived from or in the form of rents, royalties, patents, and copyrights.

a gross basis (i.e., without regard to associated costs)—*e.g.*, salaries (*N.J.S.A.* 54A:5–1a), interest (*N.J.S.A.* 54A:5–1e), and dividends (*N.J.S.A.* 54A:5–1f). Other types are taxed on a net basis (i.e., with regard to associated costs)—*e.g.*, net profits from business (*N.J.S.A.* 54A:5–1b, net gains or income from disposition of property (*N.J.S.A.* 54A:5–1c), and net gains or net income from rents, royalties, patents, and copyrights (*N.J.S.A.* 54A:5–1d). *N.J.S.A.* 54A:5–2 provides that "[l]osses which occur within *one category of gross income* may be applied against *other sources of gross income within the same category of gross income,*" but "a net loss in one category of gross income may not be applied against gross income in *another category of gross income.*" (emphasis added.)

The term "distributive share of partnership income" is not defined anywhere in the New Jersey Gross Income Tax Act. The Director argues that *N.J.A.C.* 18:35–1.14(c)4 is a reasonable interpretation of *N.J.S.A.* 54A:5–1 and *N.J.S.A.* 54A:5–2 and hence, under well-recognized rules, is entitled to great deference.

■ Generally, we do give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing. *See Matter of Board of Educ. of Town of Boonton,* 99 *N.J.* 523, 534 (1985) ("an administrative agency's interpretation of a statute it is charged with enforcing is entitled to substantial weight"); *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 327 (1984) ("the agency's interpretation of the operative law is entitled to prevail, as long

---

e. Interest, except interest referred to in clause (1) or (2) of *N.J.S.* 54A:6–14, or interest on savings certificates issued pursuant to the provisions of chapter 6 of this act.

f. Dividends. "Dividends" means any distribution in cash or property made by a corporation, association or business trust, (1) out of accumulated earnings and profits, or (2) out of earnings and profits of the year in which such dividend is paid.

\* \* \* \* \* \* \* \* \*

k. Distributive share of partnership income.

as it is not plainly unreasonable"); *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 69 (1978) ("this Court places great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted").

Nevertheless, administrative regulations are not binding on the courts and a regulation will fall if a court finds that the rule is inconsistent with the statute it purports to interpret. *See Airwork Serv. Div. v. Director, Div. of Taxation*, 97 *N.J.* 290, 296 (1984) (when the court can identify a particular legislative intent, that intent cannot be "outweighed or overcome simply by a countervailing administrative practice"); *Service Armament Co. v. Hyland*, 70 *N.J.* 550, 563 (1976) ("an administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment"); *Kingsley v. Hawthorne Fabrics Inc.*, 41 *N.J.* 521, 528 (1964) (an "administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows."); *Mayflower Sec. Co., Inc. v. Bureau of Sec.*, 64 *N.J.* 85, 93 (1973) (a court is "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue"); *Safeway Trails, Inc. v. Furman*, 41 *N.J.* 467, 484 (1964) (quoting *Burnet v. Chicago Portrait Co.*, 285 *U.S.* 1, 16, 76 *L.Ed.* 587, 595 (1932)) (" 'The Court is not bound by an administrative construction, and if that construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons.' ").

### III

In the present case, we are not persuaded by the Director's interpretation of *N.J.S.A.* 54A:5–1 and 54A:5–2, embodied in *N.J.A.C.* 18:35–1.14(c)4, as applied to income earned in the ordinary course of business of a securities partnership. We find, as did the courts below, that the Act, "insofar as income derived from a business conducted in proprietorship or partner-

ship form is concerned, imposes a tax on net income." 7 *N.J. Tax* at 194.

We emphasize that the parties stipulated, and the Tax Court found, that each partnership in question realized capital gain and dividend income in the ordinary course of its securities business and that a portion of each partnership's operating expenses were related to the production of this income. Accordingly, we find that the taxpayers' method of determining their "distributive share of partnership income" pursuant to *N.J.S.A.* 5A:5–1k comports with the statutory language and the legislative objectives of the Act. We are unpersuaded by the Director's reliance on federal income tax concepts or by his claim that *N.J.A.C.* 18:35–1.14(c)4 promotes administrative simplicity.

The Legislature defined "net profits from business" as follows:

> The *net* income from the operation of a business, profession, or other activity, after provision for *all* costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes but without deduction of taxes based on income.
>
> [*N.J.S.A.* 54A:5–1b (emphasis added).]

We are convinced that the Legislature did not intend this category to exclude income that would clearly fall into other categories if it were not earned in the regular course of a business. Otherwise, the category "net profits from business" would become a virtual nullity. It would not include income earned by those who are in the business of rendering services for remuneration, since that income is described in *N.J.S.A.* 54A:5–1a; nor the interest income of those in the business of lending, for that income is listed in *N.J.S.A.* 54A:5–1e; nor income from the sale of real and personal property, including inventory, because that income is covered by *N.J.S.A.* 54A:5–1c; nor rental income realized by a taxpayer in the real estate business, since that income is listed in *N.J.S.A.* 54A:5–1d. Since it is well-established that a statute should not be construed in a manner that renders any portion of it a nullity,

*Peper v. Princeton Univ. Bd. of Trustees, supra,* 77 *N.J.* at 68, we conclude that the Legislature intended "net profits from business" to include income such as interest, dividends, and rent that would be categorized separately if it were not earned in the ordinary course of business.

This analysis of *N.J.S.A.* 54A:5-1 and *N.J.S.A.* 54A:5-2 is consistent with the approach that has been followed by the Tax Court. *See Landwehr v. Director, Div. of Taxation,* 6 *N.J. Tax* 66 (1983) (taxpayer permitted to deduct expenses incurred in providing services because he was an independent contractor rather than an employee); *Applestein v. Director, Div. of Taxation,* 5 *N.J. Tax* 73 (1982) (taxpayer was not engaged in business and could not deduct interest and stock transfer payments because taxpayer was not actively involved in managing his investments; court assumed that a person actively involved in managing investments could classify his investment income as business profits and could deduct expenses incurred in earning the income); *Walsh v. Director, Div. of Taxation,* 4 *N.J. Tax* 107 (1982) (margin interest expenses deductible against taxpayer's income from securities trading only if trading constituted a business."); *Boudrot v. Director, Div. of Taxation,* 4 *N.J. Tax* 268 (1982) (compensation for services treated as *net* business income if recipient was in the business of being an independent contractor).

We also conclude that the Legislature intended profits earned in the ordinary course of business of a partnership to be treated similarly to profits earned in the ordinary course of business of a proprietorship, namely, on a net consolidated basis. The Act twice states that a partnership as such is not subject to taxation, and that individuals doing business in a partnership are to be taxed in their capacities as *individuals,* just as sole proprietors are. *See N.J.S.A.* 54A:2-2; *N.J.S.A.* 54a:5-4. The language of *N.J.S.A.* 54A:5-1b itself discloses that the important inquiry is whether the item of income is attributable to "the operation of a business, profession or other activity." Clearly, these partnerships are engaged in business.

The Director has not offered any reason why the Legislature would have intended to tax business income more severely when realized by a partner than by a sole proprietor. Nor is there any evidence that the Legislature intended to tax a securities partnership more severely than any other business, including a sole proprietorship engaged in the securities business. Indeed, there is no convincing argument why differences between a partnership and a sole proprietorship should justify disparate treatment with respect to expenses incurred while earning taxable income. If a sole proprietor can deduct business expenses against business income, members of a partnership taxed should likewise be able to deduct business expenses against business income.

The Director, in his own regulations, recognizes the symmetry between a sole proprietorship and a partnership insofar as "partnership income" is to be determined on a net basis just as "net profits from business" are determined. *N.J.S.A.* 54A:5–1b specifically states that "net profits from business" are calculated "after provision for *all* costs and expenses incurred." (Emphasis added.) Similarly, *N.J.A.C.* 18:35–1.14(c)2 directs that a partner's distributive share of partnership income be determined with reference to the partnership's "net income ... after provision for all costs and expenses incurred in the conduct thereof." (Emphasis added.) We note that *N.J.A.C.* 18:35–1.-14(c)2 is inconsistent with *N.J.A.C.* 18:35–1.14(c)4, which on its face treats dividend and gains earned in the ordinary course of partnership income as separate categories taxable on a gross basis without regard to costs or expenses incurred in their production.

The Director argues that *N.J.A.C.* 18:35–1.14(c)4 achieves the Legislature's goal to treat each of the fourteen categories of income listed in *N.J.S.A.* 54A:5–1 separately. We disagree.

First, we note that the Director's justification is inconsistent with the regulation itself. The Director does not explain why the regulation designates only two categories of income—"divi-

dends" and "gains"—for treatment separate from the residual category of "distributive share of partnership income." For example, the Director acknowledges that rental income derived in the ordinary course of business of a real estate partnership or interest derived in the ordinary course of a finance business would be classified as "distributive share of partnership income" even though it comprises a separate category in *N.J.S.A.* 54A:5–1. We find no support for the Director's argument that only dividends and gains are to be excluded from a partner's "distributive share of partnership income."

Moreover, we find that the Director misinterprets *N.J.S.A.* 54A:5–2. That statute allows "[l]osses which occur within one category of gross income [to] be applied against other sources of gross income within the same category." The prohibited inter-category netting of losses applies only with respect to income and losses realized from unrelated activities—*i.e.*, from *"another* category of gross income" (Emphasis added). This statute was intended to be an anti-tax shelter device. The history of the Act indicates that tax shelter avoidance was a significant legislative objective. The Statement accompanying A–1513 explains that the Act was intended to include "income from all sources (including income from tax preferences or tax sheltered sources under the Federal Income Tax law) except for items of excludible income defined in Chapter 6." It further states, "[t]his tax avoids loopholes presented in other variations of the income tax." A Statement by the Senate Revenue, Finance, and Appropriations Committee explains that the bill "was intended as a tax on income, shorn of the deductions and items of tax preference in the Federal Income Tax." According to Richard Van Wagner, who served as Chairman of the Assembly Taxation Committee, combatting tax shelters was a great public concern:

> One of the major objections to the income tax proposals of Governor Cahill and of Governor Byrne, heard at the public hearings throughout the state and at committee meetings held during the consideration of this program, was the inequity of the federal income tax. These objections came primarily from individuals who contended that the rich benefited from loopholes and that the

working man, the middle income taxpayer, was required to pay more than his share. The special treatment of capital gains, depreciation on commercial real estate and tax exempt securities were most often cited.

[Richard Van Wagner, *The New Jersey Gross Income Tax: An Analysis From Background to Enactment*, 2 Seton Hall Legislative Journal 100, 111 n. 33 (1977).]

A tax shelter is an investment designed to give a taxpayer losses or tax credits that can be applied to reduce tax liability with respect to income realized from other unrelated sources. Tax shelters are avoided if taxpayers are not permitted to deduct losses or apply tax credits derived from their tax shelter investments against income derived from unrelated sources.

This is not a tax shelter case. Here, business expenses incurred by a partnership in the ordinary course of its business are being applied against that partnership's income, also earned in the ordinary course of its business. No business expenses are being applied against income derived from an unrelated source.

We emphasize the limits of this decision. Items of income realized outside the scope of a business are to be allocated to the other categories of income listed in *N.J.S.A.* 54A:5-1. In the present cases, there is no question that the dividends and gains represented income realized from the actively conducted business of these securities firms. If the dividend and gains income had represented income derived from the passive investments of the partnership, they would have constituted separate categories of income, i.e., "dividends" pursuant to *N.J.S.A.* 54A:5-1f and "gains" pursuant to *N.J.S.A.* 54A:5-1c of income. *See Newark Building Assocs. v. Director, Div. of Taxation*, 128 *N.J.Super.* 535 (App.Div.1974) (partnership holding title to office building under net 25 year lease not in business for purpose of unincorporated business tax act, *N.J.S.A.* 54:11B-1, because partners were merely passive investors). We recognize, as did the Tax Court, that "[w]here the production of dividend, capital gains or other passive investment income is merely incidental to the primary business of the partnership the statute effectively precludes the use of the partnership entity,

through ownership of passive investments, as a vehicle to shelter the investment income of the partners with 'losses' sustained in the course of the partnership's primary business." *Smith v. Taxation Div. Dir., supra,* 7 *N.J.Tax* 205. Thus, we disagree with the Director's characterization of *N.J.S.A.* 54A:5–1k as creating a "loophole" and his corresponding assertion that *N.J.A.C.* 18:35–1.14(c)4 should be upheld because it closes "loopholes."

Despite the Act's clear legislative history, the Director defends *N.J.A.C.* 18:35–1.14(c)4 by drawing analogies between the Act and concepts employed in the Internal Revenue Code. The Director attempts to equate the term "distributive share of partnership income," *N.J.S.A.* 54A:5–1k, with the term "distributive share" referred to in section 702(a) of the Internal Revenue Code. The Director also asserts that the Legislature equated the term "income" with the federal income tax concept of "ordinary income" and the word "gain" with the federal income tax concept of "capital gain."

We disagree that the Legislature patterned the New Jersey Gross Income Tax Act on the Internal Revenue Code. Even a cursory comparison of the New Jersey Gross Income Tax and the Internal Revenue Code indicate that they are fundamentally disparate statutes. The federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid the loopholes available under the Code. For example, the Code taxes all income, from whatever source derived, except income expressly exempted from tax. I.R.C. § 61. On the other hand, the Gross Income Tax Act only taxes expressly identified classes of income. The Code taxes all income on a net consolidated basis. The Gross Income Tax Act taxes some income on a net basis and other income on a gross basis. The Gross Income Tax Act establishes "categories" of income against which the cross-netting of losses is barred. No such device is included in the Code.

No evidence has been presented that the Legislature intended to equate "distributive share" with "distributive share of partnership income" or to equate "income" and "gain" with analogous terms used in the Internal Revenue Code. Moreover, when the Legislature intended to incorporate federal income tax concepts, it did so explicitly. For example, *N.J.S.A.* 54A:5–1b provides that net profits from business be determined in "accordance with the method of accounting allowed for federal tax purposes." *N.J.S.A.* 54A:5–1c provides that "[t]he term 'net gains or net income' shall not include gains or income from transactions to the extent to which nonrecognition is allowed for federal income tax purposes."

The Act's legislative history clearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes available under the federal tax laws. *Supra* at 30–31. Since the Legislature rejected the federal model of taxing income, other branches of government may not superimpose the Code upon the Gross Income Tax Act in the guise of statutory construction.

Finally, the Director defends *N.J.A.C.* 18:35–1.14(c)4 on the ground that it promotes administrative simplicity. He contends that this simplicity is achieved because the three classes of income into which partnership income is segregated in the regulation are also segregated on the federal tax Schedule K–1. We are not persuaded. First, we doubt the extent to which simplicity is achieved since the categories into which income is divided on the K–1 are not identical to those into which income is divided by *N.J.A.C.* 18:35–1.14(c)4 and because the K–1 form changes from year to year to reflect modifications of the Internal Revenue Code. Second, and most importantly, administrative convenience cannot support a regulation that conflicts with the governing statute. *Commissioner v. Engle,* 464 *U.S.* 206, 225–27, 104 *S.Ct.* 597, 608–09, 78 *L.Ed.*2d 420, 434–36 (1984).

## IV

We find that the taxpayer's method of computing his "distributive share of partnership income" conforms to the scheme set forth in the New Jersey Gross Income Tax Act. The Legislature intended that all income, including gains and dividends, realized by a partnership in the ordinary course of its business be taxed to the partners on a net consolidated basis, as a single category of income under *N.J.S.A.* 54A:5–1k. This interpretation gives meaning to each subsection of *N.J.S.A.* 54A:5–1 and conforms exactly to the express language of *N.J.S.A.* 54A:5–2 that losses "within one category of gross income may be applied against other sources of gross income within the same category." Neither the statute nor its legislative history suggests that the Legislature wished to depart from the sound economic practice that business expenses incurred in producing business income should be allowed to be offset against such business income.

Today, we do not hold that *N.J.A.C.* 18:35–1.14(c)4 is *per se* invalid. There may be circumstances in which application of the regulation to partnership income received by a person not actively engaged in business is consistent with the goals of the Gross Income Tax. We hold merely that application of *N.J. A.C.* 18:35–1.14(c)4 to dividends and gains income realized by a partnership in the ordinary course of its securities business is inconsistent with the Legislature's intent.

Accordingly, the judgments of the Appellate Division are affirmed.

*For affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN and GARIBALDI—6.

*For reversal*—None.