PER CURIAM.
Plaintiffs appeal from the Tax Court’s affirmance of a decision by defendant, the Director, New Jersey Department of the Treasury, Division of Taxation, denying their refund claims for New Jersey income taxes paid in 1986 on the gain realized by a New Jersey partnership in which the trusts were partners. The gain *161 was attributable to the redemption of stock which the partnership held in a corporation which was liquidated. We reverse.
Plaintiffs are twelve Florida trusts — the Tina Schiller Trusts for the benefit of twelve individuals. On September 9,1987, plaintiffs filed 1986 New Jersey Non-Resident Gross Income Tax fiduciary returns, and included in their gross income gain realized by the Federal-Pater partnership, Federal-Pater Co., Inc. In October or November 1988, plaintiffs filed timely amended returns claiming refunds for the tax paid on this gain in the amount of $90,192 exclusive of interest. On July 10, 1990, defendant issued a final determination denying plaintiffs’ refund claims.
Plaintiffs instituted twelve separate actions in the Tax Court contesting the refund denials. Defendant filed an answer generally denying plaintiffs’ entitlement to refunds. The Tax Court consolidated the actions.
The parties stipulated to the following facts.
During 1978, Tina Schiller took up residence in Florida and later that year created the twelve Schiller trusts, the plaintiffs herein. The sole asset of each trust consisted of shares in Federal-Pater Co., Inc., a corporation that owned New Jersey real estate, much of which was leased for billboard use. During 1986, the shareholders of Federal-Pater Co., Inc., including the twelve Schiller trusts, created a partnership and contributed all their shares in Federal-Pater Co., Inc. to the partnership. The trusts thereby became partners in a partnership owning shares of stock in a company that in turn owned New Jersey real estate.
On December 31, 1986, Federal-Pater Co., Inc. was liquidated and its assets including New Jersey real estate were distributed to its sole shareholder, the partnership. As a result of the liquidation, the partnership acquired direct ownership of the New Jersey real estate. For federal income tax purposes, the partnership realized a capital gain on the liquidating distribution. I.R.C. § 331(a). Under I.R.C. § 702(a)(2), plaintiffs, as partners in the partnership, were subject to federal income taxes on their distributive shares of this gain.
*162 The record and trial in this matter supply the following additional information.
The partnership was created on November 24,1986 to “acquire, own, operate, manage, lease, mortgage” and dispose of the corporation’s assets and to invest and reinvest the proceeds of the sale of its assets. Also on November 24,1986, the corporation adopted a plan of dissolution and liquidation. Ruth Rudolph and Mildred Bosin signed the partnership agreement as trustees for the twelve trusts, and also contributed corporation shares which they owned individually and a group of shares which were held by another trust for the benefit of themselves and Abe Schiller. This latter trust is not .involved in this appeal. The record does not disclose the relationship between Tina Schiller, the beneficiaries and the trustees, nor does it indicate why the decision was made to dissolve the corporation.
Defendant conceded at trial that the partnership “did not get going” in 1986 and did nothing but receive the real estate assets of the liquidated corporation and realize for federal tax purposes a capital gain upon the liquidation. We assume that the gain represented the difference between the cost basis of the corporate shares held by the partnership and redeemed by the corporation and the fair market value of the assets received by the partnership in exchange.
Peter Thompson, a partner in the bookkeeping firm employed by the partnership, explained that, beginning in 1987, the partnership took over the business which had been conducted by the corporation until its liquidation on December 31, 1986. The eight employees employed by the corporation at that time became employees of the partnership and the “whole management structure” just continued as a partnership. The eight employees were also partners in the entity and received a monthly salary. These employees periodically inspected the properties to ensure that they were being maintained and performed some administrative duties. Thompson’s firm recorded financial transactions on a monthly basis, paid operating expenses for the office and took care of some administrative matters for the partnership.
*163 The corporate/partnership business consisted of the ownership of real estate in New Jersey. The partnership acquired from the corporation fourteen parcels which were leased to Gannett Outdoor Advertising (Gannett) for billboards. These parcels were subject to ground leases which required Gannett to build, maintain, and lease the respective signs.
The partnership also received in liquidation eleven buildings. According to John Lasser, plaintiffs’ expert appraiser, ten of these properties were leased under net leases in which the partnership, as landlord, received rent net of any expenses. Lasser characterized the remaining lease as a modified net lease in which the landlord had to pay an amount equal to the real estate taxes for the “base year” of 1972 and the tenant had to pay any increases over that figure.
Thompson, defendant’s expert, described the conduct of the partnership business in 1987 to show that, while no partnership activity was conducted in 1986, the 1987 activities demonstrated that the entity formed in 1986 was an active business for the management and ownership of real estate rather than a passive investment vehicle. Thompson recalled that in 1986-87, Samuel Bosin, the managing partner of the partnership, would come to the partnership office periodically and handle such matters as negotiating lease amendments and assisting attorneys in the preparation of actual lease documents. With respect to the Gannett ground leases, Bosin would pay the real estate taxes and then bill the tenant for the amount. He would also follow this practice with approximately fifty percent of the bills on the other leases, when he did not feel comfortable with the tenant. Thus, the thrust of Thompson’s testimony was that Bosin handled matters for which the partnership, as landlord under a net lease, was not technically responsible.
The Tax Court ruled that plaintiffs’ “activities reflect an active leasing operation by a corporation” and found that the gain realized upon the redemption of the corporate stock was generated in the conduct of business by the partnership. It reasoned that while stock is usually a passive investment, it may be used in the *164 conduct of a taxpayer’s business and, when this is the case, its sale generates income in the ordinary course of business. It found that the stock herein was held as a means of acquiring those assets which the partnership needed to fulfill its purpose. Finally, it rejected plaintiffs’ argument that defendant’s determination should be reversed because plaintiffs would not have been required to pay any New Jersey income taxes if they had held the stock until after the corporate liquidation and then transferred the assets to the partnership. The court reasoned that it is ‘“not what might have happened nor what the taxpayer could have done but what actually occurred that determines the tax consequences of a transaction.’ ” Schiller Trust v. Director, Div. of Taxation, 14 N.J.Tax 173, 180-181 (Super.A.D.1994) (quoting General Trading Co. v. Taxation Div. Dir., 83 N.J. 122, 138, 416 A.2d 37 (1980).
Plaintiffs’ motion for reconsideration was denied by another judge[1] by order entered on November 2, 1992.
On appeal, plaintiffs contend that: (1) the corporation’s disposition of stock in 1986 should be treated as the nontaxable sale of an intangible asset; (2) the Tax Court erroneously relied on the discredited Com Products[2] decision to establish business activity by the partnership; and (3) the Tax Court misapplied Newark Bldg. Assoc.[3] in finding 1986 partnership business activity in this matter.
Defendant responds that the partnership’s receipt of the corporation’s assets in 1986 constituted business activity, that the partnership herein was much more active than that in Newark Bldg. Assoc., and that plaintiffs misread the decision in Arkansas *165 Best Corp. v. Commissioner, 485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988), which modified Com Products.
The New Jersey Gross Income Tax Act, N.J.S.A 54A:l-2 to N.J.S.A. 54A:9-25.5 (the Act) does not tax partnerships as such. N.J.S.A. 54A:2-2; Smith v. Director, Div. of Taxation, 108 N.J. 19, 24, 527 A2d 843' (1987). Instead, the Act provides that “[i]ndividuals carrying on business as partners shall be liable for the New Jersey Gross Income Tax only in their separate or individual capacities.” N.J.S.A 54A:2-2; see also N.J.S.A 54A:5-4, reiterating that a partnership as such is not subject to the tax imposed by the Act but specifying that “the income or gain of a member of a partnership or association shall be subject to the tax and the tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership or association for its taxable year ending within or with the partner’s or member’s taxable-year.” N.J.S.A 54A:5-3 in turn provides that the income of a beneficiary of an estate or trust is “that part of the income or gains received by the estate or trust for its taxable year ending within or with the beneficiary’s taxable year” which was required to be or was in fact distributed to the beneficiary. The taxable income of an estate or trust shall consist of the income or gains received by it which has not been distributed or credited to its beneficiaries. Ibid.
Nonresidents, such as plaintiffs, are taxed only on that portion of their income derived from sources within the State, excluding pensions and annuities as set forth in 54A:5 — l(j). N.J.S.A 54A:5-
5. N.J.S.A 54A:5-8 defines some of those sources:
Income from sources within this State for a nonresident individual, estate or trust means the same as compensation, net profits, gains, dividends, interest or income enumerated and classified under chapter 5 of this act to the extent that it is earned, received or acquired from sources within this State:
(1) By reason of ownership or disposition of any interest in real or tangible personal property in this State; or
(2) In connection with a trade, profession, occupation carried on in this State or for the rendition of personal services performed in this State; or
(3) As a distributive share of the income of an unincorporated business, profession, enterprise, undertaking or other activity as the result of work done, services rendered or other business activities conducted in this State except as allocated to *166 another State pursuant to regulations promulgated by the director under this act; or
(4) From intangible personal property employed in a trade, profession, occupation or business carried on in this State.
[Emphasis added].
Plaintiffs contend that the Tax Court decision improperly transforms capital gain income into ordinary business income, even though the partnership conducted absolutely no business activity in 1986. However, they recognize that the activities of the partnership from 1987 forward might constitute business activity within the meaning of the Act.
Plaintiffs claim that defendant has consistently viewed the disposition of stock by a nonresident in connection with a liquidating transaction as the nontaxable sale of an intangible asset. The disposition of stock is not taxable under N.J.S.A 54A:5-8(4) (income taxable to nonresident if derived from “intangible personal property employed in a trade, profession, occupation or business carried on in this State”). Defendant explains that “income distributions from income derived from corporate stock” are taxable to nonresidents under this provision only if actually employed in a New Jersey business.
N.J.SA 54A:5-8 requires that the gain or income being taxed flow from the partnership activity. This is not true herein, ^at least from a technical perspective. The partnership realized a gain because the cost basis of the corporate stock it held was less than the fair market value of the assets it received in exchange. I.R.C. § 331(a); § 1001(a). In other words, the stock appreciated as a result of the activities of the Federal-Pater corporation up until the time of its liquidation, thereby requiring that, when the corporation redeemed its stock, it distribute assets valued at more than the stock’s cost basis. Thus, the gain is solely attributable to corporate, not partnership activities, and therefore is not taxable under N.J.SA 54A:5-8 because the gain realized by the partnership was not the result of work done or services rendered by or other business activities of the partnership. This gain is not the type of business activity that the Legislature envisioned as taxable. If the receipt of distribution of corporate stock by a non *167 resident individual is not taxable, why would it become taxable because it takes the form of distribution to a partnership?
The focus here is not whether the partnership engaged in business activity, but rather whether the gain realized was “the result of’ any activity of the partnership. Therefore, it is not necessary to resolve the theoretical point as to whether receipt of a liquidating distribution constitutes “business activity.”
Defendant’s reliance upon Smith v. Director, Div. of Taxation, supra, is not helpful in determining the basic question of whether the gain here was realized in the ordinary course of business. However, Smith tends to support plaintiffs’ position because its observation about the inappropriateness of treating sole proprietors differently from partnerships, Smith, supra, 108 N.J. at 29, 527 A.2d 843, militates against treating corporate stock surrendered and exchanged by an individual in a corporate liquidation differently from stock surrendered or exchanged by a partnership.
The disposition of the corporate stock here constitutes the nontaxable sale of the intangible asset.
Reversed.

 This was necessary because the original judge had retired.

 Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 16 S.Ct. 20, 100 L.Ed. 29 (1955), rehearing denied, 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 823 (1956).

 Newark Building Assoc. v. Director, Div. of Taxation, 128 N.J.Super. 535, 320 A.2d 867 (App.Div.1974).