KUSKIN, J.T.C.
Plaintiffs Michael Scully and James Scully[1] are owners of partnership interests in Port-O-Call Associates, L.P., a New Jersey limited partnership (the “Partnership”). They appeal as-' sessments of Gross Income Tax imposed on them by defendant Director for tax year 1992 with respect to income arising from the discharge of indebtedness owed by the partnership. The Director asserts that the Partnership realized the discharge of indebtedness income in connection with its ordinary business operations, and, therefore, the income must be included in plaintiffs’ respee- *555 tive distributive shares of partnership income under N.J.S.A. 54A:5-1(k) and (b). Plaintiffs contend that discharge of indebted: ness income is not taxable under the New Jersey Gross Income Tax Act, N.J.S.A 54A:1-1 to N.J.S.A. 54A:10-12, and that, if the Partnership realized discharge of indebtedness income, the income did not result from ordinary business operations. I hold that the income in dispute is not includible in plaintiffs’ distributive shares of partnership income, and, therefore, the Director’s assessments must be canceled.
The factual background to these matters has been stipulated. The following are the pertinent portions of the stipulations. Each plaintiff owns a 48.5% limited partnership interest and a 1% general partnership interest in the Partnership. In addition, each owns 50% of the corporate stock of Port-O-Call Associates, Inc., a Pennsylvania corporation, which owns a 1% general partnership interest in the Partnership.
On or about December 19, 1985, the Partnership purchased the Port-O-Call Hotel (the “hotel”), a ninety-nine room facility including a restaurant and retail store, located in Ocean City, New Jersey. In connection with the purchase, the Partnership obtained a mortgage loan in the principal amount of $7,000,000 from Atlantic Financial Federal (“AFF”). The loan was evidenced by a mortgage note and mortgage, both dated May 30, 1986 (the “mortgage documents”). As a result of the insolvency of AFF, the mortgage documents were assigned to the Resolution Trust Corporation (the “RTC”). On February 27, 1992, the RTC, as receiver for AFF, sold the mortgage loan to Optimum Mortgage Investment Company for a purchase price of $4,661,051.51. At the time of the sale, the principal balance remaining due and owing on the mortgage note was $6,778,341.92. The purchase price paid by Optimum, therefore, was $2,117,290.41 less than the principal balance of the note.
Optimum’s purchase of the mortgage loan from the RTC was financed by plaintiffs pursuant to an agreement under which Optimum was obligated to assign the mortgage documents to plaintiffs and received a fee of $50,000 for its services. Partic *556 ipation by Optimum in the transaction was necessary because regulations applicable to the RTC prohibited the acquisition of a mortgage loan by principals of the mortgage debtor.
The assignment of the mortgage documents by Optimum to plaintiffs occurred on February 28,1992. Thereafter, during 1992, plaintiffs assigned the mortgage documents to the Partnership. The Partnership’s federal income tax return for 1992 reported this assignment as a capital contribution in the sum of $4,715,073. The return also reported “debt forgiveness income,” in the amount of $2,117,119.[2] The Partnership’s 1992 Pennsylvania Information Return reported the same capital contribution and reported $2,117,119.00 as “Net profits from business ... apportioned to Pennsylvania.” The Partnership issued Schedules K-l (IRS Form 1065, entitled “Partner’s Share of Income, Credits, Deductions, Etc.”) to each plaintiff. These Schedules contained information consistent with that reported in the Partnership’s tax returns, and the information was incorporated in the 1992 federal income tax returns and Pennsylvania Resident Individual Tax Returns filed by plaintiffs.
Plaintiffs originally did not file New Jersey Gross Income Tax Returns. However, the New Jersey Division of Taxation conducted a sales and use tax audit of the Partnership for tax years 1992 and 1993. As a result of this audit, the Division commenced a gross income tax audit of each of the plaintiffs for those years, and, on December 5, 1995, issued Notices of Assessment to them. Plaintiffs filed protests of the assessments, and, after communications with the Division, plaintiffs filed 1992 New Jersey NonResident Gross Income Tax Returns dated June 24, 1996. On April 2, 1997, the Director issued Final Determinations imposing tax on $2,117,119 of discharge of indebtedness income which he described as occurring “within a business entity.”
*557 The statutory basis for the Final Determinations was N.J.S.A. 54A:5-1, which defines the categories of income subject to New Jersey gross income tax. Paragraph (k) of this statute designates as one of those categories “[djistributive share of partnership income .” Partnership income is determined pursuant to N.J.S.A. 54A:5-1(b), which imposes Gross Income Tax on “[njet profits from business” defined as “net income from the operation of a business, profession or other activity after provision for all costs and expenses incurred in the conduct thereof, determined either on a cash or accrual basis in accordance with the method of accounting allowed for federal income tax purposes,” except that deduction is not permitted of taxes based on income, or penalties, fines or treble damages paid to the New Jersey Department of Environmental Protection.
In Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987), our Supreme Court articulated the legal principles to be applied in deciding whether, under N.J.S.A. 54A:5-1(b) and (k), plaintiffs are subject to Gross Income Tax on discharge of indebtedness income realized by the Partnership. In Smith, the Director contended that certain categories of income realized by a partnership retained their character when distributed to partners. As a result, in calculating his or her distributive share of income, a partner could not offset a loss in one category of income against income or gain in another category because N.J.S.A. 54A:5-2 provides that “a net loss in one category of gross income may not be applied against gross income in another category of gross income.” The taxpayer-plaintiffs in Smith were partners in partnerships engaged in the securities business which generated income from commissions, advisory fees, underwriting and syndication fees, interest, dividends, and trading profits. The plaintiffs contended that all income and gains they derived from their partnership interests should be treated as one category so that all losses could be offset. As stated by our Supreme Court, the issue in the case was “whether a partner in a securities firm, in determining his ‘distributive share of partner-ship income,’ may deduct partnership business expenses against all types of partnership income, including dividends and capital gains, realized in the *558 ordinary course of that partnership’s business.” Id. at 20, 527 A.2d 843.
In ruling in favor of the plaintiffs, our Supreme Court emphasized the parties’ stipulation that the partnerships realized capital gains and dividend income in the ordinary course of their securities business and that a portion of the operating expenses of each partnership was related to the production of this income. The Court held that “the Legislature intended ‘net profits from business’ to include income such as interest, dividends, and rent that would be categorized separately if it were not earned in the ordinary course of business.” Id. at 28, 527 A.2d 843. “[T]he important inquiry is whether the item of income is attributable to ‘the operation of a business, profession or other activity.’ ” Ibid.
In holding that partnership losses could be offset against the capital gains and dividend income in question, the Supreme Court was very careful to delineate the limits of its decision.
Items of income realized outside the scope of a business are to be allocated to the other categories of income listed in N.J.S.A. 54A:5-1. In the present cases, there is no question that the dividends and gains represented income realized from the actively conducted business of these security Anns. If the dividend and gains income had represented income derived from the passive investments of the partnership, they would have constituted separate categories of income, i.e., “dividends” pursuant to N.J.S.A. 54A:5—1(f) and “gains” pursuant to N.J.S.A. 54A:5-1(c).
[Id. at 31, 527 A.2d 843.]
Consistent with this language, the Court noted that passive income, which is merely incidental to the primary business of a partnership, cannot be sheltered by losses sustained by the partnership in the ordinary course of its business, and, therefore, passive income cannot be combined with other income under N.J.S.A. 54A:5-1(k). Id. at 31-32, 527 A.2d 843.
In reaching its decision the Supreme Court rejected the argument that the Gross Income Tax Act is patterned on the Internal Revenue Code.
[The Gi'oss Income Tax] Act’s legislative history clearly indicates that the Legislature intended to and did reject the federal income tax model in favor of a gross income tax act in order to avoid tax loopholes available under the federal tax laws. Since the Legislature rejected the federal model of taxing income, other branches *559 of government may not superimpose the I Internal Revenue) Code upon the Gross Income Tax Act m the guise of statutory construction.
[Id. at 33, 527 A.2d 843 (citations omitted).]
Under Smith, the issue of whether partners are subject to gross income tax on discharge of indebtedness income realized by a partnership requires a determination as to whether that income arose in the ordinary course of the partnership’s business. If not, discharge of indebtedness income retains its character when distributed to the partners, and such income is not subject to tax because it is not a category of income identified in N.J.S.A. 54A:5-1. Weintraub v. Director, Div. of Taxation, 19 N.J.Tax 65, 72-76 (2000) (containing a comprehensive review of the legislative history demonstrating, and prior court decisions holding, that discharge of indebtedness income is not subject to New Jersey Gross Income Tax).
The Supreme Court in Smith did not clarify the definition of ordinary business income because the stipulation of the parties eliminated the issue, but the Court did distinguish between passive income and “income realized from the actively conducted business” of the securities partnerships. Smith v. Director, Div. of Taxation, supra, 108 N.J. at 31, 527 A.2d 843. Regulations issued by the Director provide little assistance in determining what income is ordinary business income. The Director has concluded that “[t‘]he determination of whether income is derived from the conduct of a trade, business or profession shall be based upon an examination of facts and circumstances of the taxpayer’s activities.” N.J.A.C. 18:35-1.1(c). Various court decisions rendered after Smith provide only general guidance as to what constitutes ordinary business income, e.g. Dantzler v. Director, Div. of Taxation, 18 N.J.Tax 507, 510-12 (1999); Sabino v. Director, Div. of Taxation, 14 N.J.Tax 501 (1995), rev’d 296 N.J.Super. 269, 686 A.2d 1197 (App.Div.1996), op. after remand, 17 N.J.Tax 29 (1997). See also Tina Schiller Trust v. Director, Div. of Taxation, 14 N.J.Tax 173 (App.Div.1994) (interpreting N.J.S.A. 54A:5-8(a)(3), which requires allocation to New Jersey of a pai’tner’s distributive share of income resulting from “work done, services rendered or other business activities conducted in this *560 State” by an unincorporated business). These authorities suggest, but do not directly hold, that ordinary business operations are those activities in which an entity normally and regularly engages in the conduct of its business and in furtherance of its purposes. I adopt this standard but recognize that the issue is fact sensitive, and any general principle inevitably will be subject to exceptions. Cf. Sabino v. Director, Div. of Taxation, supra, 17 N.J. Tax at 33 n. 2 (indicating that the cost of a roof replacement, although infrequently incurred, could constitute an ordinary business expense).
The Director contends that the discharge of indebtedness income realized by the Partnership arose in the ordinary course of its business because obtaining a mortgage loan in order to finance the acquisition of the facility in which the Partnership would conduct business is part of ordinary business operations. Therefore, income relating to the financing is includible in distributive shares of partnership income under N.J.S.A. 54A:5-1(k). The Director cites the Partnership’s 1992 federal income tax return and Pennsylvania Information Return as demonstrating that the discharge of indebtedness income constituted ordinary business income because, in the federal return, the Partnership reported “debt forgiveness income” of $2,117,119 and, in the Pennsylvania return, apportioned to Pennsylvania “net profits from business” in the same amount. The Director also relies on the Schedule K-l issued to each plaintiff by the Partnership. He asserts that these Schedules included as “ordinary income” each partner’s share of the $2,117,119 of discharge of indebtedness income realized by the Partnership.
Plaintiffs explain the Partnership’s and them federal income tax returns by referring to I.R.C. § 61(a)(12) which specifically includes in gross income “income from discharge of indebtedness.” In addition, plaintiffs contend that, under the Code, when they acquired the AFF mortgage loan on February 28, 1992, for an amount less than the principal balance then due and owing, the reduction in indebtedness was income to the Partnership under the income attribution rules in I.R.C. § 108(e)(4)(A). As a result, under the Code, no additional discharge of indebtedness income *561 resulted from plaintiffs’ later contribution of the mortgage documents to the Partnership, and such contribution constituted a capital contribution of approximately $4,700,000, the balance of the mortgage debt remaining after deduction of the discharge of indebtedness income.
As Smith establishes, the Gross Income Tax Act is not modeled on the Internal Revenue Code, and principles of income attribution contained in the Internal Revenue Code are not applicable under the Gross Income Tax Act in the absence of specific provisions in the Act. The Act contains no attribution rules similar to I.R.C. § 108(e)(4)(A). Accordingly, for New Jersey Gross Income Tax purposes, when plaintiffs acquired the mortgage documents on February 28, 1992, if discharge of indebtedness income resulted,[3] that income was attributable to plaintiffs and not to the Partnership, and was not subject to Gross Income Tax. Weintraub v. Director, Div. of Taxation, supra, 19 N.J.Tax at 72-76. Whether or not plaintiffs realized discharge of indebtedness income, the Partnership continued to owe approximately $6,700,000. Only the identity of the payee changed; the amount of the indebtedness did not.
The Director does not dispute that the Partnership realized no discharge of indebtedness income when plaintiffs acquired the mortgage documents. The Director contends that the Partnership realized discharge of indebtedness income when plaintiffs contributed the documents to the Partnership. At the time of this contribution, the indebtedness represented by the mortgage note was approximately $6,700,000. The Director, however, does not contend that the Partnership realized $6,700,000 in discharge of indebtedness income. He seeks to tax only $2,117,119, which is the difference between the principal balance of the loan and plaintiffs’ purchase price for the loan. The Director attempts to *562 explain the amount of discharge of indebtedness income subject to tax by citing the federal income tax return and the Pennsylvania Information Return filed by the Partnership, both of which reported $2,117,119 of discharge of indebtedness income. However, that reporting appears to reflect income generated when plaintiffs acquired the mortgage loan. Furthermore, the method of reporting under federal or Pennsylvania law, even if correct (and plaintiffs assert that the methodology used in the Partnership’s federal and Pennsylvania returns was erroneous) does not constitute a basis for determining whether plaintiffs received taxable income under the New Jersey Gross Income Tax Act.
The reporting of $2,117,119 in discharge of indebtedness income in the Partnership’s federal return can be explained under the I.R.C. attribution rules discussed above, but these rales are not applicable to the Gross Income Tax Act. Smith v. Director, Div. of Taxation, supra, 108 N.J. at 31, 527 A.2d 843. In any event, under the I.R.C., the Partnership realized discharge of indebtedness income when plaintiffs acquired the mortgage loan, not when they contributed it to the Partnership. But the Director contends that the contribution, not the acquisition, of the loan generated the discharge of indebtedness income in issue. As a result, he has failed to explain his determination that the Partnership realized discharge of indebtedness income in the sum of $2,117,119 when plaintiffs contributed the mortgage loan to the Partnership.
The Director also has failed to explain why plaintiffs’ contribution of the mortgage loan to the Partnership was not, as plaintiffs argue, simply a contribution to capital which generated no income. See N.J.S.A. 42:2A-35. See also Stella A. Schaevitz Trust v. Director, Div. of Taxation, 15 N.J. Tax 296, 325 (1995) (citing Commissioner v. Fink, 483 U.S. 89, 107 S.Ct. 2729, 97 L.Ed.2d 74 (1987), which states that, under the Internal Revenue Code, a contribution to the capital of a corporation “has no immediate tax consequences” and that this rule applies to “a shareholder’s forgiveness of a debt owed to him by the corporation.” 483 U.S. at 94, 107 S.Ct. at 2732, 97 L.Ed.2d at 82.). As discussed above, the Partnership’s 1992 federal and Pennsylvania tax returns reported a capital contribution of $4,715,073, after taking into account *563 $2,117,119 of discharge of indebtedness income arising from plaintiffs’ acquisition of the mortgage documents and attribution of this income to the Partnership. Because New Jersey does not have similar attribution rules, it would appear that, in contributing the mortgage documents to the Partnership, plaintiffs made a capital contribution of approximately $6,700,000.
Even if the Director correctly analyzed the existence and amount of discharge of indebtedness income, his interpretation of N.J.S.A. 54A:5-1(b) (which imposes tax on “net profits from business”) unduly broadens the concept of ordinary business operations articulated in Smith v. Director, Div. of Taxation, supra,, 108 N.J. 19, 527 A.2d 843. The Director asserts that financing of the acquisition of the Partnership’s principal asset was an ordinary business operation, and, therefore, discharge of indebtedness income attributable to that financing is subject to tax. In,support of this argument, he notes that interest paid on the mortgage loan constituted an expense incurred in the conduct of the business which was deductible in determining net profits under N.J.S.A. 54A:5-1(b) and, therefore, under principles of symmetry, discharge of the underlying loan itself should be deemed to generate ordinary business income.
I reject the Director’s contentions on two bases. First, the financing of the purchase of the hotel was not an ordinary business operation of the Partnership for purposes of N.J.S.A. 54A:5-1(b). The acquisition of the hotel and the obtaining of a mortgage loan to finance the acquisition were one-time occurrences, preliminary to commencement of ordinary business operations. Cf. Woodward v. Commissioner, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970) (holding that for federal tax purposes: “It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures,] ... [and] ancillary expenses [(legal, brokerage accounting, and similar costs)] incurred in acquiring or disposing of an asset are as much a part of the cost of that asset as is the price paid for it.”) 397 U.S. at 575-76, 90 S.Ct. at 1305, 25 L.Ed.2d at 581-82. The possibility that the mortgage loan might be refinanced in the event of declining interest rates, *564 or for other reasons, does not transform the mortgage financing transaction into an ordinary business operation, even though the monthly mortgage payments, including interest, are business operating expenses. Principles of symmetry are not dispositive of tax liability, as the Director has recognized. See N.J.A.C. 18:35-1.1(d)(3) (stating that: “Business costs or expenses, which relate to business income exempt from tax under the Gross Income Tax Act ... may be deductible ordinary business costs or expenses under the Gross Income Tax Act.”).
Second, the Director focuses on the financing transaction as constituting an ordinary business operation of the Partnership. However, the event which the Director contends generated the income in dispute was not the financing transaction, but plaintiffs’ contribution of the mortgage loan to the Partnership thereby discharging the mortgage debt. Thus, even if obtaining the mortgage loan to purchase the hotel constituted an ordinary business operation, that, in itself, is not determinative of whether discharge of indebtedness income realized by the Partnership is includible in plaintiffs’ distributive shares of Partnership income. It is the income-generating event — the discharge of the loan— which is determinative, and that event was not part of the Partnership’s ordinary business operations even if the loan transaction was.
It is unlikely that, under any circumstances, a partnership, as a regular part of its business operations, would receive discharges of indebtedness owed to third parties. As a result, there are very few, if any, circumstances in which discharge of indebtedness income would be includible in a partner’s distributive share of partnership income under N.J.S.A. 54A:5-1(k). This result is consistent with the exclusion of discharge of indebtedness income from taxation under the Gross Income Tax Act. As explained in Weintraub v. Director, Div. of Taxation, supra, 19 N.J.Tax 65, prior to enactment, the Bill containing the Gross Income Tax Act imposed a tax on discharge of indebtedness income, but the provision was deleted.
[T]he deletion of the category “Income from Discharge of Indebtedness” as an includible source of taxable gross income contained in the original Assembly Bill *565 from the final version of the Act, indicates a dear intent by the New Jersey Legislature not to subject DOI income to New Jersey Gross Income Tax.
| hi at 76.]
In summary, I conclude that the event which the Director contends generated discharge of indebtedness income, namely, plaintiffs’ contribution of the mortgage loan to the Partnership, constituted a contribution to capital and did not produce income to the Partnership. Even if the contribution of the mortgage loan generated discharge of indebtedness income to the Partnership, 1 conclude that the income is not taxable to plaintiffs as part of their respective distributive shares of partnership income under N.J.S.A. 54A:5-1(k) because the mortgage loan transaction was not part of the ordinary business operations of the Partnership for purposes of determining the Partnership’s net income under N.J.S.A. 54A:5-1(b). Furthermore, even if the loan transaction constituted an ordinary business operation of the Partnership, that transaction did not generate the income which the Director seeks to tax, and the income-generating event, the discharge of the debt, was not part of the Partnership’s ordinary business operations.
If I were to accept the Director’s arguments and sustain the tax assessments at issue, the following incongruity would result. As discussed above, plaintiffs may have received discharge of indebtedness income when they acquired the mortgage documents. If so, this income was subject to federal income tax but was not taxable under the Gross Income Tax Act. If plaintiffs are deemed to have transferred the income to the Partnership when they contributed the mortgage documents, then, under the Director’s interpretation of N.J.S.A. 54A:5-1 (b) and (k), because the income passed through the Partnership, plaintiffs would be required to pay taxes on the very same income which was not taxable to them when they first received it earlier in the same tax year.
The preceding analysis makes unnecessary consideration of plaintiffs contention that, because the mortgage loan closed in Pennsylvania and the transactions leading to the discharge of indebtedness occurred in Pennsylvania, the discharge of indebtedness income which defendant seeks to tax was allocable to Pennsylvania. If I were required to decide this issue, I would reject *566 plaintiffs’ argument. The Partnership was a New Jersey limited partnership formed for the purpose of acquiring and operating property in New Jersey. The mortgage documents identified the Partnership as having “its principal office” in Ocean City, New Jersey. Income earned from sources within this State includes income which is “earned, received or acquired from sources within this State: (l)[b]y reason of ownership ... of any interest in real or tangible personal property in this State; or ... (3)[a]s a distributive share of the income of an unincorporated business as the result of work done, services rendered or other business activities conducted in this State except as allocated to another state pursuant to regulations promulgated by the director .... ” N.J.S.A 54A:5-8. Therefore, if I had concluded that the discharge of indebtedness income was taxable as part of plaintiffs’ distributive shares of Partnership income, the discharge of indebtedness income would not be insulated from tax by reason of being allocable to Pennsylvania.
Judgment will be entered canceling the assessments imposed by Director.

 Patricia Scully, the wife of Michael Scully, is a party to this action because she and her husband filed a joint income tax return. References to plaintiffs in this opinion are to Michael and James Scully. i

 The numerical discrepancies between the loan discount obtained by Optimum and the discharge of indebtedness income and capital contributions reported for tax purposes were not satisfactorily explained by the parties, but the discrepancies are of no consequence for purposes of this opinion.

 It is at least arguable that, under the Gross Income Tax Act, because the Partnership vuis the debtor and plaintiffs were not, plaintiffs' acquisition of the loan at a discount generated no dischaige of indebtedness income because the indebtedness owed by the Partnership was not reduced. I need not resolve this question.