*935 OPINION.
Black:
The principal issue in this proceeding is whether, under section 112 (f) of the Revenue Acts of 1934 and 1936, no gain or loss should be recognized in connection with the proceeds of $120,000 received by petitioner as use and occupancy insurance as the result of the fire which destroyed the greater part of petitioner’s plant on March 31, 1936, which proceeds, together with straight fire insurance proceeds, were credited to a replacement fund account on its books and all used in. the acquisition of other property similar or related in service or use to the property destroyed by the fire. As an alternative petitioner contends that, if gain is to be recognized, it all accrued during the fiscal year ended May 31,1936, and none of it is taxable for the fiscal year ended May 31, 1937. Section 112 (f) of both acts is identical and is printed in the margin.[1]
*936 At the time petitioner filed its returns for the taxable years in question it reported the occurrence of the fire and the receipt of the proceeds, but contended that no gain or loss should be recognized since it had used all of the proceeds, and more too, in the acquisition of other property similar or related in service or use to the property destroyed. The respondent allowed this contention with respect to the proceeds of straight fire insurance, but rejected'the contention with respect to the proceeds of $120,000 from the use and occupancy insurance, and in his deficiency notice “held that the proceeds from use and occupancy insurance contracts constitute taxable income prorated between the two years, $26,000.00 to the fiscal year ended May 31,1936, and $94,000.00 to the fiscal year ended May 31,1937.” The respondent has not cited any authority for his determination and subsequent to the hearing he notified us that he did not desire to file a brief.
Article 112 (f)-l of Kegulations 86 and 94 contains a paragraph, identical in both regulations, which reads as follows:
The proceeds of a use and occupancy insurance contract, which by its terms insured against actual loss sustained of net profits in the business, are not proceeds of an involuntary conversion but are income in the same manner that the profits for which they are substituted would have been.
Doubtless the Commissioner relied upon this regulation in his determination of the deficiencies. It seems to be well settled that, if under the terms of a use and occupancy insurance contract the taxpayer is insured against actual loss sustained of net profits in the business, then it is true that the proceeds received under such a policy are not proceeds of an involuntary conversion, but are income in the same manner that the profits for which they are substituted would have been. International Boiler Works Co., 3 B. T. A. 283; Miller v. Hocking Glass Co., 80 Fed. (2d) 436; certiorari denied, 298 U. S. 659. If, however, the contract of insurance does not insure against the loss of net profits, but is a contract to pay the insured a flat per diem allowance for the loss of the use and occupancy of the property destroyed by fire, measured from the date of the occurrence of the fire to the time when the destroyed property can, with ordinary diligence, be replaced and operations resumed, then upon receipt of the proceeds under such a policy no gain or loss should be recognized, providing the proceeds are expended in the acquisition of other property similar or related in service or use to the property destroyed. Piedmont-Mt. Airy Guano Co., 3 B. T. A. 1009; Flaxlinum Insulating Co. 5 B. T. A. 676.
In the instant proceeding two of the three policies originally insured petitioner against the loss of net profits, but on December 8, 1935, this form of policy was cancelled and a corrected form adopted providing that if petitioner’s plant were destroyed by fire, petitioner *937 would be paid a straight per diem amount measured by a reasonable time required for reconstruction. The third policy was on the corrected form. The record, therefore, clearly shows that the use and occupancy insurance carried by petitioner was not based upon and had no relation to insurance of profits, but, instead, was based entirely upon a per diem allowance multiplied by the estimated number of days it would take to rebuild petitioner’s plant. No income statements or other financial statements were required or requested of petitioner. The only dispute between petitioner and the insurance companies was over the time it would take to rebuild. Petitioner claimed it would take 9% months. The insurance companies first estimated 6% months. A compromise of 7 months and 5 days was finally agreed upon.
For the purposes of the application of section 112 (f), supra, we know of no valid reason why proceeds from use and occupancy policies of the type here involved should be treated any differently than the proceeds from the straight fire insurance policies. We think the evidence clearly shows that petitioner’s plant (as a result of the fire) was involuntarily converted into money, namely, proceeds from straight fire insurance and proceeds from use and occupancy insurance, and that this money was forthwith in good faith expended in the acquisition of other property similar or related in service or use to the property so converted. All of the money thus received was so expended. We, therefore, hold that under section 112 (f), supra, no gain or loss should be recognized upon the receipt of the proceeds of the use and occupancy insurance in the amount of $120,000. Piedmont-Mt. Airy Guano Co., supra; Flaxlinum Insulating Co., supra.
Relative to the second issue, the respondent disallowed a deduction taken by petitioner on its income tax return for the fiscal year ended May 31, 1936, in the amount of $1,317.06 representing the cost of tank foundations, abandoned as a result of the fire. The reason given in the deficiency notice for the disallowance was that this item was covered by fire insurance. In its brief petitioner contends that the amount it deducted on its return “is an allowable deduction, because not covered by insurance, or in the alternative as a loss of useful value.” The applicable statute is section 23 (f) of the Revenue Act of 1934, which is as follows:
SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
* ' * * * * * *
(f) Losses by Cobpobatxons — In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.
The record in this case refutes the respondent’s determination that this item was covered by fire insurance. The evidence shows in the *938 first instance that these foundations were uninsurable, and further shows that their value was eliminated from the insured values when the fire loss was adjusted. Clearly, therefore, the alleged loss was not “compensated for by insurance or otherwise” and accordingly becomes an allowable deduction if the record satisfies the statutory requirements that a loss was actually sustained.
As early as the Revenue Act of 1918 and continuing through all the subsequent revenue acts, the Commissioner in his appropriate regulations has allowed a deduction for “loss of useful value” of capital assets, when through some change in business conditions the usefulness in the business of a capital asset is suddenly terminated so that the taxpayer discards it permanently from use in the business. This was intended as an exception to the rule requiring a sale or other disposition of property in order to establish a loss, and was made applicable to buildings “only when they are permanently abandoned or permanently devoted to a radically different use.” The material provisions of article 23 (e)-3 of Regulations 86 are printed in the margin.[2]
In C. U. Connellee, 4 B. T. A. 359, the. taxpayer in 1919 began the construction of a hotel building. During that year he incurred liabilities of $7,922.17 in putting in the foundation, after which the entire project was abandoned. We allowed the taxpayer in that case to deduct as a loss in that year the amount expended in connection with the hotel venture.
In Kilby Car & Foundry Co., 4 B. T. A. 1294, we held that a corporation which, through a change of business conditions, has no use for a building erected for a particular purpose and abandons the building is entitled to deduct the loss sustained by reason of such abandonment. Substantially to the same effect see Multibestos Co., 6 B. T. A. 1060; Fraser Brick Co., 10 B. T. A. 1252; American Cigar Co., 21 B. T. A. 464, 494 (6th issue); affirmed upon other issues, 66 Fed. (2d) 425; certiorari denied, 290 U. S. 699.
*939 In the instant proceedings, the evidence definitely shows that after the fire petitioner decided to rebuild its new plant elsewhere, and that it had no possible further use for the tank foundations. The usefulness to petitioner of these foundations was as fully destroyed by the fire as was the plant itself, and petitioner thereafter abandoned such foundations permanently from use in its business. The respondent does not claim that the foundations had any .salvage value. Under the authorities above cited, we hold that petitioner is entitled to deduct the cost of the foundations as a loss sustained during the fiscal year ended May 31,1936.

Decision will ~be entered, under Bule SO.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
[[Image here]]
(f) Involuntary Conversions. — If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the acquisition of control of a corporation owning such other property, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

 Art. 23 (e)-3. Loss of useful value. — When, through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action the difference between the basis (adjusted as provided in section 113 (b) and article 113 (a) (14) — 1, 113 (b) — 1, and 113 (b)~2) and the salvage value of the property. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property has been prematurely discarded, as, for example, where an increase in the cost or change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case whore the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery only when its use as such is permanently abandoned. * * *