PER CURIAM.
Plaintiffs, Frank E. Walsh, Jr. and Mary D. Walsh, appeal from a Tax Court judgment which affirmed the Director, Division of Taxation’s disallowance of their deduction for a nonbusiness bad debt on their 1987 State income tax returns. Plaintiffs contend that although the New Jersey Gross Income Tax Act does not explicitly provide for a bad debt deduction, such a deduction is implicitly included in N.J.S.A. 54A:5-lc which allows the deduction of losses from the disposition of property. We affirm.
The parties stipulated the following facts. Plaintiff Frank E. Walsh, Jr. (plaintiff) was a shareholder of Tactel Systems, Inc. (Tactel). He guaranteed the payment of principal and interest on bank loans made to Tactel. He also directly loaned Tactel $421,-856 which it also used in its business. Prior to 1987, Tactel transferred its assets to Fidelco Communications Corp. (Fidelco) and Fidelco assumed Tactel’s liabilities including the liability for plaintiffs advances. Plaintiff was not a shareholder of Fidelco but remained liable as a guarantor on the bank loans made to Tactel.
*182 Fidelco subsequently ceased operations and sold off its assets to pay its creditors. Fidelco closed its last plant by April 30, 1987, and had no remaining saleable assets.
In 1987, when Fidelco defaulted on the bank loans guaranteed by plaintiff, the banks enforced the guarantees against him, so on April 30, 1987, plaintiff paid the banks $2,079,586 on the guarantees. Fidelco also defaulted on the $421,856 plaintiff had advanced directly to Tactel.
Plaintiffs deducted $2,601,442[1] for the losses on the Tactel advances and payments on the guarantees on Schedule B “Net Gains Or Income From Disposition Or Property” of their 1987 New Jersey Gross Income Tax return.
By letter dated April 17,1991, defendant issued a final determination letter disallowing the $2,601,442 deduction on plaintiffs’ return because “the Gross Income Tax Act contains no provision for the deduction of a non-business bad debt.” Defendant calculated a balance due in the amount of $131,535.02, which included penalty and interest.
In a memorandum opinion dated October 18, 1993, Judge Crab-tree upheld defendant’s disallowance of the deduction. The judge stated:
The sole issue in this case is whether the economic loss sustained by plaintiff from the worthlessness of debt owed to him or guaranteed by him with respect to funds advanced to the debtors is a loss “derived from the sale, exchange or other disposition of property” within the purview of N.J.S.A. 54A:5-l(c).
The judge found that this issue had been decided (by him) in a recent Tax Court case:
The resolution of this issue would appear to be governed by this court’s decision in Vinnik v. Director, Division of Taxation, 12 N.J.Tax 450 (Tax 1992), which held that a worthless debt, although treated as a loss from the sale or exchange of a capital asset held for not more than one year (i.e., a short-term capital loss) under § 166(d)(1)(B) of the Internal Revenue Code, “does not fit the statutory rubric of ‘sale, exchange or other disposition of property’ found in N.J.S.A 54A:5-1(c).”
*183 Id. at 454.
Plaintiffs asked the Tax Court to reconsider Vinnik, but the court rejected their arguments for overturning that decision. First, plaintiffs argued that the deduction of a nonbusiness bad debt in the Internal Revenue Code, 26 U.S.C.A. § 166(9)(1)(B), was incorporated into the New Jersey Gross Income Tax Act. Judge Crabtree rejected this argument because our Supreme Court recognized in Smith v. Director, Division of Taxation, 108 N.J. 19, 33, 527 A.2d 843 (1987), that the Legislature rejected the federal income tax model in drafting the Act.
Second, plaintiffs argued that the write-off of a bad debt is similar to an involuntary conversion resulting from a casualty loss or condemnation of property, which under N.J.S.A. 54A:6-9(e) is treated as the sale of such property. The judge also rejected this argument because the Act failed to make a specific provision for the deduction of a bad debt, whereas it had provided for a casualty loss deduction.
Third, plaintiffs argued that the abandonment of a debt when it becomes worthless is a disposition of property under N.J.S.A. 54A:5-1c. Judge Crabtree found this argument unconvincing. He reasoned that the plain meaning of disposition does not normally include abandonment and that under the rule of statutory interpretation ejusdem generis, “other disposition” should be read in conjunction with the other words in the list contained in N.J.S.A 54A:5-1c, specifically “sale or exchange.” He found that a sale or exchange involves a transfer to a third party, whereas writing-off a bad debt involves no third party. Thus, the judge concluded that the write-off of a bad debt should not be included within the meaning of “other disposition.”
The New Jersey Gross Income Tax Act (Act), N.J.S.A 54A:1-2 to 9-25.5, taxes certain categories of income. One category is net income from disposition of property:
New Jersey gross income shall consist of the following categories of income:
c. Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, *184 including real or personal, whether tangible or intangible as determined in accordance with the method of accounting allowed for federal income tax purposes. For the purpose of determining gain or loss, the basis of property shall be the adjusted basis used for federal income tax purposes.
[N.J.S.A. 54A:5-lc.]
Under this section, a taxpayer may deduct losses sustained from the disposition of one property from gains made from the disposition of another property. However, under N.J.S.A 54A:5-2, a net loss from the sale of all property may not be deducted from other categories of income:
Losses which occur within one category of gross income may be applied against other sources of gross income within the same category of gross income during the taxable year. However, a net loss in one category of gross income may not be applied against gross income in another category of gross income.
[N.J.S.A 54A:5-2.]
Here, plaintiffs treated the bad debt losses of $2,601,442 sustained from the Tactel loans and guarantees as losses from the disposition of property. Plaintiffs thus deducted $2,601,442, as well as capital losses, from their $6,769,252 gain from the sale of property for a net gain from the sale, of property of $4,645,612.
Plaintiffs argue that charging off a worthless nonbusiness bad debt is a disposition of property within the meaning of N.J.S.A 54A:5-lc and thus they are entitled to subtract this loss from gains on the disposition of other property.
Generally, a' court’s duty in construing a statute is to determine the intent of the Legislature. AMN, Inc. v. South Brunswick Township Rent Leveling Board, 93 N.J. 518, 525, 461 A.2d 1138 (1983). In seeking that intent a court must consider any legislative history which may be of aid. State v. Madden, 61 N.J. 377, 389, 294 A.2d 609 (1972).
The history of the Act indicates that a major goal of the Legislature was the avoidance of the tax shelters and the “loopholes” found in the federal tax law. Smith v. Director, Division of Taxation, supra, 108 N.J. at 30-31, 527 A.2d 843.
Also:
*185 One of the major objections to the income tax proposals of Governor Cahill and of Governor Byrne, heard at the public hearings throughout the state and at committee meetings held during the consideration of this program, was the inequity of the federal income tax. These objections came primarily from individuals who contended that the rich benefited from loopholes and that the working man, the middle income taxpayer, was required to pay more than his share. The special treatment of capital gains, depreciation on commercial real estate and tax exempt securities were most often cited.
[Ibid, (citing Richard Van Wager, The New Jersey Gross Income Tax: An Analysis From Background to Enactment, 2 Seton Hall Legislative Journal, 100, 111 n. 33 (1977)).]
Plaintiffs here would have us read N.J.S.A 54A:5-lc broadly so that the language “losses, derived from the sale, exchange or other disposition of property” would include losses from nonbusiness bad debt. The legislative history weighs against such a broad interpretation. The Legislature determined that the New Jersey Gross Income Tax should contain fewer deductions from income than the federal income tax. This was seen as a way of making the Gross Income Tax fairer. The Legislature did not explicitly provide for a deduction of a nonbusiness bad debt. Thus, in view of the legislative history, it would appear that the Legislature did not intend for N.J.S.A 54A:5-lc to be read broadly to include a deduction for nonbusiness bad debts.
The real dispute between the parties is whether the Legislature intended to treat nonbusiness bad debt losses as deductible and, more specifically, whether the write-off of a nonbusiness bad debt is the disposition of property within the meaning of N.J.S.A 54A:5-1c. The judge below found that the write-off of such a debt is not a disposition of property. He relied in part upon the ejusdem generis rule of statutory construction, which provides that when general words follow specifically named things of a particular class, the general words should be understood as limited to things of the same class or at least of the same general character. Denbo v. Moorestown Township, 23 N.J. 476, 481-82, 129 A.2d 710 (1957). The judge determined: “The ejusdem generis rule requires that the general word ‘disposition’ be defined by the specific words ‘sale or exchange’ preceding it. A sale or exchange is not the same as an abandonment of property.”
*186 Plaintiffs argue that this rule must not be mechanically applied and a correct application of the rule would support their position. They contend that the abandonment of a debt is similar to a sale or exchange because all three involve the final termination of ownership.
Plaintiffs further contend that the plain meaning of “disposition” includes the abandonment of a worthless debt, and they would have this court read “disposition” broadly. Black’s Law Dictionary 471 (6th ed. 1990), defines disposition as: “Act of disposing; transferring to the care or possession of another. The parting with, alienation of, or giving up property.” Plaintiffs emphasize the second part of this definition and point out that the writing-off of a debt is a form of parting with, alienation of, or giving up property.
Finally, plaintiffs argue that the phrase “sale, exchange or other disposition” is a term of art borrowed from the federal tax statute and therefore must be interpreted with reference to federal law. The New Jersey Supreme Court in Smith v. Director, Division of Taxation, supra, 108 N.J. at 32, 527 A.2d 843, rejected the Director’s attempt to equate terms in the Gross Income Tax Act with a similar term in the Internal Revenue Code. The Court stated, ‘We disagree that the Legislature patterned the New Jersey Gross Income Tax Act on the Internal Revenue Code.” Ibid.
We affirm substantially for the reasons expressed by Judge Crabtree in his written opinion decided October 18, 1993.

The $2,079,586 in guarantees plaintiff paid to the banks and the $421,856 in advances which plaintiff made to Tactel add up to $2,501,442. We can find no explanation in the briefs as to why plaintiffs deducted $2,601,442.