RIMM, J.T.C.
Plaintiff, Israel L. Tischler, appeals a January 15, 1997 final determination of defendant, Director, Division of Taxation (“Director”) assessing New Jersey Gross Income Tax in the amount of $2,800.98, including interest calculated to February 15,1997. The appeal stems from a refund by the Director of taxes paid by plaintiff and included on plaintiffs 1992 New Jersey Gross Income Tax return.
There are three issues before the court: (1) whether fire insurance proceeds paid by an insurance company should be included in New Jersey gross income for the tax year in which the proceeds are received by the taxpayer but not used to replace the destroyed property; (2) whether taxpayer can assert the equitable doctrine of estoppel to prevent the Director from assessing gross income tax and interest obligations based on statements made by employees of the Division of Taxation (“Division”) concerning the taxability of insurance proceeds from property destroyed by fire; and (3) whether representations by Division employees preclude the assessment of interest and penalties on outstanding tax liability pursuant to the New Jersey Taxpayer’s Bill of Rights, L. 1992, *286 c. 175, specifically § 4, codified as N.J.S.A. 54:49-11b (“Bill of Rights”).
Plaintiff held a fifty percent interest in a partnership known as the “Tischler/Serewitch Partnership,” which held title to real property at 1517 Pacific Avenue, Atlantic City. Situated on the property were a building and equipment used for the operation of a business. Plaintiff took depreciation on the property over several years, resulting in a federal income tax basis of zero for the building by 1992. In January 1992, the building and its contents were completely destroyed by fire. Plaintiff personally received $49,600 in fire insurance proceeds as a result of the destruction of the premises. The proceeds were never used to replace the building or the equipment.
Plaintiff filed his New Jersey Gross Income Tax return (NJ-1040) for 1992 and included as income the $49,600 in fire insurance proceeds received. Plaintiff listed this money as income from the disposition of property. Plaintiff’s 1992 return reported a gross income tax liability of $2,140, of which liability $1,989 was attributable to the $49,600 of fire insurance proceeds. In June, 1998, plaintiff received a notice of adjustment from the Director stating that plaintiff had failed to pay his taxes on time and assessing a penalty of $86.65 as of April 29,1993. While attempting to resolve this penalty claim with the regional office of the Division, plaintiff alleges that he was told over the telephone “by [a] representative [of the Division] that, since the insurance payments were to pay for property damages, they were not taxable on [his] N.J. Gross Income Tax, and [that he] should file an amended return.” Plaintiff further alleges that he was told over the telephone during subsequent attempts to resolve the $86.65 penalty claim that “the fire proceeds were not subject to the tax and to file an amended return.”
Plaintiff filed an amended return (NJ-1040X) on July 8, 1993. Plaintiff omitted the $49,600 in fire insurance proceeds from gross income and claimed a $1,989 refund. Based on plaintiff’s unaudited 1992 amended return, the Director issued a refund check to *287 plaintiff in the amount of $1,989 after the receipt of plaintiff’s amended return.
On June 17,1996 the Director sent plaintiff a Notice of Deficiency, notifying plaintiff of the completion of an audit of the amended return. As a result of the audit, the Director included the $49,600 in fire insurance proceeds as part of plaintiffs 1992 gross income. The Director demanded the return of the $1,989 refund in addition to $705 in interest totaling $2,694. In response to this assessment, plaintiff called the Division and spoke with an auditor in regard to his liability. The auditor responded that regardless of what other employees of the Division may have told plaintiff, the fire insurance proceeds were taxable as income. Plaintiff subsequently went to a regional office of the Division and spoke to a representative who opined that the proceeds were not subject to the tax. The representative allegedly contacted the auditor and explained to him his opinion in the matter. Plaintiff then contacted the auditor who again reiterated that the proceeds were, in fact, subject to the gross income tax. On June 28, 1996, the auditor provided plaintiff with a letter confirming that “the gain from the disposition of property taxed on your 1992 return was based on N.J.S.A. 54A:5-1c which stated that the net gain is determined in accordance with the method of accounting allowed for federal income tax purposes.”
On July 8, 1996, plaintiff wrote a letter to the Division requesting information on whether fire insurance proceeds are included in gross income. Plaintiff wrote that “[t]he building housing my business was destroyed by fire. Is the money I received from the insurance company for that property taxable on my N.J. State Income Tax?” As the Director points out, the “inquiry failed to note that [plaintiff] had not used the insurance proceeds to repair or replace the building or equipment destroyed by the fire. Nor did the plaintiff note that the basis for the property at the time of the fire was $0.” On August 15,1996, an employee of the Division, wrote back in response to plaintiffs inquiry:
I am in receipt of your letter of July 8, 1996 wherein you state that you received funds under an insurance policy for damage to a building in which your business *288 was located. If the funds you received represents property loss only then same is not subject to New Jersey gross income tax.
After receiving this response, plaintiff wrote to the Director requesting a conference to contest the Notice of Deficiency. Plaintiff contested the Director’s determination of the assessment and also claimed that the Director should be estopped from assessing the tax based on the oral and written statements of the Division’s employees stating that the insurance proceeds were not taxable. A telephone conference was held on December 23, 1996. As a result of the conference, the Director issued a Notice of Final Determination rejecting plaintiffs arguments and upholding the assessment of $1,989, in addition to interest in the amount of $811.98.
On February 26, 1997, plaintiff initiated this action by filing a Complaint with the Tax Court. Following a Pretrial Order, the Director filed a Motion for Summary Judgment on November 7, 1997. The motion was not heard, and the matter went to trial.
I.
Plaintiff argues that he was entitled to the $1,989 refund because he properly amended his 1992 tax return to exclude the $49,600 insurance proceeds collected as a result of the fire that destroyed the improvements at 1517 Pacific Avenue. Specifically, plaintiff argues that the involuntary conversion of his property is not a “disposition of property” under N.J.S.A 54A:5-lc. The income does not fit into any other category of income, and plaintiff argues that the proceeds are not taxable income under the New Jersey Gross Income Tax Act, N.J.S.A 54A:1-1 to:10-12 (“the Act”). The Director argues that the insurance proceeds constitute a gain from the disposition of property properly included as income on the original return pursuant to N.J.S.A 54A:5-lc. The Director claims that plaintiff must repay the $1,989 refund plus interest.
The Act imposes a tax on the gross income of every individual, estate or trust of New Jersey. In order for income to be included in gross income, it must fit into one of the prescribed categories of *289 gross income pursuant to N.J.S.A. 54A:5-1. N.J.S.A. 54A:5-lc states that “net gains or income from disposition of property” are included in gross income. The relevant portion of that provision provides that gross income shall consist of:
Net gains or net income, less net losses, derived from sale, exchange or other disposition of property, including real or personal, whether tangible or intangible as determined in accordance with the method of accounting for federal income tax purposes. For the purpose of determining gain or loss, the basis of the property shall be the adjusted basis used for federal income tax purposes.
Whether or not fire insurance proceeds recovered from the involuntary conversion of property constitute gain or income from the disposition of property and, consequently, must be included in gross income, is a question not yet answered by New Jersey courts, nor specifically addressed by the New Jersey Legislature. However, the Division has issued an opinion with regard to an issue similar to that in the present case. The Division issued a response to a taxpayer’s inquiry concerning the taxability of insurance proceeds resulting from an involuntary conversion of rental property. 14 New Jersey State Tax News 67 (May/June 1985). The taxpayer had received insurance proceeds resulting from the total destruction of the property by fire. The “house had a basis of $26,000, an appraised value of $70,000 and the insurance recovery was $45,000.” Ibid. The Division published its response, entitled “GROSS INCOME TAX. Involuntary Conversion of Rental Property,” stating that:
In this particular case, the taxpayer had an involuntary conversion of rental real property under Federal Internal Revenue Code Section 1033 and a gain is recognized between the difference of the insurance recovery of $45,000 and the adjusted cost basis of the property of $28,000.
The Taxpayer may elect not to have this gain recognized where a replacement is made within two years after the close of the first taxable year in which any part of the gain on the involuntary conversion is recognized.

[Ibid.}

A taxpayer who realizes gain from the involuntary conversion of property, but does not replace the property converted, has gain to the extent the insurance proceeds exceed the adjusted basis of the property. This gain from the disposition of property must be included as gross income. The Director concluded that New *290 Jersey follows the federal system with regard to insurance proceeds from the involuntary conversion of real property. See Ibid.
There is no specific legislative or judicial guidance on this matter, and the determination by the Division is entitled to enforcement provided it “is not plainly unreasonable.” Metromedia, Inc. v. Director, Div. of Tax., 97 N.J. 313, 327, 478 A.2d 742 (1984). Although not binding on this court, the opinion is persuasive in the absence of other dear legislative or judicial guidance. See Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)(indicating that “the [administrative] agency’s interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable”); Smith v. Director, Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987)(stating that “[g]enerally, we do give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing”).
Whether it is reasonable to apply federal income tax principles depends on whether the Legislature intended the New Jersey system of calculating income to be based on the federal system. In adopting the Act, the Legislature did not model the New Jersey system on the federal system. It chose instead to create a system allowing for fewer deductions. See, Vinnik v. Director, Div. of Taxation, 12 N.J. Tax 450, 453 (Tax 1992) (stating that “[t]he New Jersey gross income tax is a tax on gross income reduced only by certain limited deductions and credits,” and reiterating that the federal income tax model was rejected by the Legislature in favor of a gross income tax to avoid loopholes available under the federal system); Walsh v. Director, Div. of Taxation, 15 N.J. Tax 180, 185 (App.Div.1995) (indicating that the courts rely on the Legislature’s intent to create a ‘fairer’ system of taxation by including fewer deductions than the federal system).
New Jersey courts may apply federal principles of gross income only in those instances where the Legislature specifically referred to federal principles. However, in Smith v. Director, Div. of Taxation, 108 N.J. 19, 527 A.2d 843 (1987), the Supreme *291 Court gave specific examples of provisions of the Act which incorporate federal income tax concepts:
Moreover, when the Legislature intended to incorporate federal income tax concepts, it did so explicitly. For example, N.J.SA 54A:5-1b provides that net profits from business be determined in “accordance with the method of accounting allowed for federal tax purposes.” N.J.S.A. 54A5-1c provides that “[t]he term ‘net gains or net income’ shall not include gains or income from transactions to the extent to which nonreeognition is allowed for federal income tax purposes.”
[Id. at 33, 527 A.2d 843.]
Where the Legislature specifically incorporated federal income tax concepts in a provision, it contemplated reference to the federal system for purposes of calculating gross income. Baldwin v. Director, Div. of Taxation, 10 N.J. Tax 273 (Tax 1988), aff'd, 237 N.J.Super. 327, 567 A.2d 1021 (App.Div.1990). In that case, the taxpayer argued that the phrase “method of accounting” as it exists in N.J.S.A 54A:5-1c, was “strictly an accounting concept and that the Legislature did not intend to adopt the substantive rules of [the federal system] or it would have done so expressly.” Id. at 284. The court ruled to the contrary and stated that “N.J.S.A 54A:5-1c, was enacted by The Legislature with federal income tax concepts in mind, which is why it specifically referred to methods ‘allowed for federal income tax purposes’ in the context of determining gains or losses for tax purposes.” Ibid. Significantly, the court also determined that the Legislature intended that “gains or losses that are recognized for federal income tax purposes in accordance with established federal income tax accounting procedures for measuring allowable gains and losses” are also gains and losses for New Jersey gross income purposes. Id. at 285. Cf. Stella A Schaevitz Trust v. Director, Div. of Taxation, 15 N.J. Tax 296, 309 (Tax 1995) (recognizing that “except where ... the New Jersey statute clearly indicates that New Jersey basis and federal basis are governed by different considerations, federal tax principles are to be applied for purposes of determining gain and loss under the Gross Income Tax Act”).
Where the Legislature is silent as to whether to include a gain in gross income, but the specific provision refers to federal tax principles for calculating gain or loss, it is reasonable for the *292 Director to rely on federal tax concepts to interpret the Act. N.J.S.A 54A:5-1c specifically refers to the federal system in calculating gross income. The federal system of calculating gross income provides that proceeds from the involuntary conversion of property not used for replacement must be included in gross income. See 26 U.S.C.A § 1033 (1997). Determining that insurance proceeds from the involuntary conversion of property must be included in gross income is consistent with the statutory scheme contemplated by the Legislature in adopting the Act.
Plaintiff realized gain from the involuntary conversion of his property. The Internal Revenue Code specifically provides for the inclusion of gain from the involuntary conversion of property. P.L. 105-34, 1997 H.R. 2014 (codified as amended at 26 U.S.C.A § 1033 (1997), amended by 111 Stat. 788 (Aug. 5 1997)). The statute provides:
(a) General rule. If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—
(2) Conversion into money. Into money or into property not similar or related in service or use to the converted property, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph____
The statute also provides a nonrecognition clause, indicating that if the money received from the involuntary conversion is used within two tax years to rebuild or replace the converted property, the taxpayer does not have gain. Ibid. Thus, under federal law, the taxpayer has two years within which to reinvest the insurance proceeds into the property before recognition of gain for federal income tax purposes. See Flaxlinum Insulating Co. v. Commissioner, 5 B.T.A 676, (1926) (indicating that the owner of property destroyed by fire who used the insurance proceeds to replace the property did not recognize gain for income tax purposes); Williams Furniture Corp. v. Commissioner, 45 B.T.A. 928, (1941) (citing a regulation requiring owner of property involuntarily converted to recognize gain); Central Tabled Mfg. Co. v. United States, 417 U.S. 673, 676, 94 S.Ct. 2516, 2519, 41 L.Ed.2d 398 (1974) (stating that “[t]he fire insurance proceeds exceeded the *293 taxpayer’s adjusted income tax basis in the insured property. Gain, therefore, was realized and ordinarily would be recognized and taxed to the [taxpayer].”). Whether or not the Act allows for this two year nonrecognition period is not now before the Court. Plaintiff never reinvested the insurance proceeds for repair or replacement of the property.
Holding that the involuntary conversion of property is a disposition of property for purposes of the Act is not inconsistent with the decision in Walsh, supra 15 N.J.Tax 180. In Walsh, the Appellate Division stated:
Plaintiffs here would have us read N.J.S.A. 54A:5-le broadly so that the language “losses derived from the sale, exchange or other disposition of property” would include losses from nonbusiness bad debt. The legislative history weighs against such a broad interpretation. The Legislature determined that the New Jersey Gross Income Tax should contain fewer deductions from income than the federal income tax. This was seen as a way of making the Gross Income Tax fairer.
[Id. at 185.]
The refusal to incorporate federal principles in Walsh with regard to deductions accomplishes the purpose of having fewer deductions from gross income. The result is a larger gross income. Treating the involuntary disposition of property as gross income also results in a larger gross income for purposes of the Act.
The involuntary conversion of property falls within the category of “disposition of property” for purposes of calculating gross income. There is no distinction, for income tax purposes, between a taxpayer who realizes a gain from the transfer of property to a third person and a taxpayer whose property is destroyed but receives insurance proceeds rather than a sale price. Gain is realized to the extent the receipts exceed the adjusted basis of the property in both transactions. Practically, there are a finite number of transactions or occurrences that can lead to a gain or loss in a taxpayer’s income, one of which is total destruction of property through casualty, ie. involuntary conversion. Although the Legislature did not expressly include involuntary conversions within the provision for disposition of property, the Act must be read to effectuate the true meaning of the provision, which was to ensure that gain from property, above the taxpayer’s basis, is subject to income tax. By including the involuntary conversion of *294 property within the definition of “disposition,” the Legislature’s intent is carried out.
Plaintiff’s property was completely destroyed by fire. Plaintiff took depreciation on the property each year until the basis was zero. Consequently, plaintiff’s adjusted basis in the property, as computed for federal income tax accounting purposes, was zero. Plaintiff’s gain from the involuntary conversion of the property was $49,600, the entire amount of insurance proceeds received as a result of the fire. Plaintiff did not use any of the proceeds to replace the converted property. Thus, plaintiff must include the entire $49,600 in gross income for the tax year 1992, which he properly did on his original 1992 tax return.
II.
Plaintiff alleges that there were numerous representations by employees of the Division made both orally and in writing, indicating that the insurance proceeds were not income pursuant to N.J.S.A. 54A:5-1c. Plaintiff argues that the Division should be estopped from assessing the tax and demanding the return of the refund with interest. The Director alleges that plaintiff failed to provide necessary information in his inquiry of the Division and that the Division may not be estopped from assessing taxes owed to the State of New Jersey.
The Tax Court has addressed whether a taxpayer can assert estoppel in order to prevent the Division from collecting taxes owed to the State. In Black Whale, Inc. v. Director, 15 N.J. Tax 338 (Tax 1995), a taxpayer appealed the final determination of the Director finding liability for sales and use taxes on a fishing and passenger boat. During the course of an investigation by the Division, its investigator entered into written agreements with the taxpayer purporting to release the taxpayer from sales and use taxes on one of taxpayer’s passenger boats. The taxpayer argued that the Director should be estopped from assessing taxes in contravention of the agreement with the investigator. The taxpayer argued that “in reliance on the deal [with the investigator] it *295 had given up its opportunity to protest the assessment against [other property].” Id. at 352. The Tax Court ruled that the doctrine of equitable estoppel did not apply to the Division when a taxpayer relies on a previous position of the Division. Id. at 353 (citing Airwork Serv. Div. v. Director, Div. of Taxation, 97 N.J. 290, 296-99, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985)). The court went on to state that, “[i]n practice, taxing authorities in New Jersey have never been estopped, either by their spoken words, their written words, or their actions, from imposing a tax.” Id. at 355. The court also indicated that:
Estoppel has not barred the imposition of a tax which a governmental representative has verbally indicated by words or writing is not applicable, or would be imposed differently than eventually assessed. See, e.g., Rubenstein v. Upper Pittsgrove Tp., 12 N.J. Tax 494, 499-501 (Tax 1991); Kearny v. Director, Div. of Taxation, 11 N.J. Tax 232, 236 (Tax 1990); L.S. Village, Inc. v. Lawrence Tp., 8 N.J. Tax 287, 296-97 (Tax 1985); aff'd o.b., 8 N.J. Tax 327 (App.Div.1986); New Jersey Dental Serv. Plan, Inc. v. Baldwin, 7 N.J. Tax 421, 430 (Tax 1985), aff'd o.b., 8 N.J. Tax 335 (App.Div.1986); Saint Michael’s Passionist Monastery v. Union City, 5 N .J. Tax 415, 418-19 (Tax 1983); Armstrong v. Director, Div. of Taxation, 5 N.J. Tax 117, 135-36 (Tax 1983), aff'd o.b. 6 N.J. Tax 447 (App.Div. 1984); Mayfair Holding Corp. v. North Bergen Tp., 4 N.J. Tax 38, 41 (Tax 1982); Gehin-Scott v. Willingboro Tp., 176 N.J.Super. 642, 647—18, 1 N.J.Tax 546, 424 A.2d 481 (Tax 1980).

[Ibid,]

The court, in affirming the Director’s determination, indicated that the Director may have made a “premature determination,” but “when confronted with additional facts” it revised that determination to indicate the correct amount of taxes owed. Id. at 356. Thus, estoppel does not bar the Director from collecting taxes owed to the State.
It follows from Black Whale that estoppel does not bar the imposition of a tax previously paid, but erroneously refunded, based on incorrect advice by a governmental representative. The taxpayer asserts that, based on these representations, he amended his return to exclude the insurance proceeds from gross income. Regardless of whether these assertions were made with knowledge of plaintiffs failure to reinvest the proceeds by replacing the property, or whether the plaintiff failed to provide this additional information upon inquiry, the statements will not estop the Divi *296 sion from collecting the taxes. Plaintiff correctly included the insurance proceeds from the involuntary conversion of the property as gross income in the first instance. The representations and the refund do not bar the State from collecting taxes due to it. In reality, contrary to plaintiffs assertions, the element of detrimental reliance, necessary for equitable estoppel to be applied, is not present in this matter.
III.
In order to determine plaintiffs obligation with respect to interest, the circumstances of the statements the Division made to the plaintiff must be closely analyzed. N.J.S.A 54:49-11b provides:
The director shall waive the payment of any part of any penalty or any part of any interest attributable to the taxpayer’s reasonable reliance on erroneous advice furnished to the taxpayer in writing by an employee of the Division of Taxation acting in the employee’s official capacity, provided that the penalty or interest did not result from a failure of the taxpayer to provide adequate or accurate information.
This provision applies only to (1) written advice furnished by an authorized employee of the Division (2) based on adequate and accurate information provided by the taxpayer (3) upon which the taxpayer reasonably relies. In the present case, the only assertion applicable to N.J.S.A 54:49-llb is the August 15, 1996 letter from the Division replying to the plaintiff’s written inquiry. This is the only written assertion made by the Division. In light of plaintiffs letter of inquiry as to the taxability of insurance proceeds, it is clear that plaintiff is not entitled to the benefits of this section, because he failed to provide adequate and accurate information.
Plaintiffs letter of July 8, 1996 was the basis of the Division’s reply. Plaintiff explained only that “the building housing my business was destroyed by fire.” This is the only information he provided to the Division before asking whether he was required to include the insurance proceeds in gross income. No information was provided as to the extent of damage done to the property, the basis in the property, the amount of proceeds received, nor the use *297 of the proceeds after receipt. In short, the information provided by the taxpayer failed to disclose fully the nature of the insurance proceeds. Further, the taxpayer did not rely on the written assertions of the Division in filing his amended return. Plaintiff filed his amended return on July 8, 1993. The first written assertion was made on August 15, 1996. N.J.S.A. 54:49-llb does not relieve plaintiff from paying interest on the outstanding taxes owed.
IV
Fire insurance proceeds from the complete destruction of property are properly deemed proceeds from the involuntary conversion of property. Unless the proceeds are used to replace the destroyed property,- the proceeds constitute income for purposes of the Act. The Division’s reliance on the federal income tax system in interpreting the phrase “sale, exchange or other disposition of income” is entitled to substantial deference as it is not plainly unreasonable. Estoppel based on erroneous representations by Division employees does not apply, and does not prevent the Division from collecting taxes properly owed to the State of New Jersey. N.J.S.A 54:49-11b is inapplicable where the taxpayer fails to provide adequate and accurate information to the Division when making an inquiry. In addition, the written advice from the Division is dated after the act which the taxpayer asserts was taken in reliance on the written advice.
The assessment is affirmed. The complaint is dismissed. Judgment will be entered accordingly.